The People *ex rel.* James M. Samuel, Sr.

*v.*

Mark Cooper *et al.*

*Filed at Springfield November 2, 1891.*

1. Drainage law—*enlarging drainage district—posting notices—sufficiency of proof.* Four notices of a petition for enlarging a drainage district were shown, by affidavits, to have been posted in four public places in the town, and also the posting of another in the town, but the affidavit in respect to this latter posting failed to show it was made in a public place. The county clerk filed his certificate showing that he caused five notices to be posted in five public places: *Held,* that this was sufficient to show the giving of the notices required by the statute in such a case.

2. Same—*annexing new territory—adjourned meeting not required—the statute construed.* Section 52 of the Drainage law, which requires an adjourned meeting of the commissioners for the purpose of perfecting the formation of a district, has no application to a proceeding under section 42 for the annexation of territory to an already estab-

lished drainage district. In such case no adjourned meeting is required to make the annexation legal.

3. SAME—*infants—guardian ad litem—the statute applied—as to organizing and enlarging districts.* In proceedings for the original organization of special drainage districts, which must be had before the county court, provision is made for the appointment of guardians *ad litem* for infant land owners; but such provision does not extend to proceedings for the annexation of new areas to districts already formed.

4. The jurisdiction of the commissioners over the lands of infants, in a proceeding for adding new territory to a district, is acquired by giving notice in the mode prescribed in the statute; and while infants thus notified may appear by their guardians and contest the proceedings, their appearance in that mode is not made necessary to the regularity or legality of the order for the enlargement of the boundaries of the district.

5. SAME—*proceedings to enlarge district—action of commissioners—how far final.* In a proceeding to enlarge a drainage district by attaching new areas of land thereto, the commissioners must determine the fact whether such lands sought to be annexed are involved in the same system of drainage, and require for outlets the drains of the district made or proposed to be made, and in the absence of fraud their decision, when made, is so far final as not to be the subject of inquiry in *quo warranto* proceedings.

6. SAME—*drainage commissioners — qualifications—of their interest as land owners—personal preferences.* Commissioners of a drainage district, who are residents and land owners in the district, are not disqualified to act in a proceeding to enlarge the boundaries of such district, where no other interest is shown in them. So the fact that one or more of them may have been in favor of the proposed annexation of lands to the district creates no disqualification.

7. Interest as a land owner or tax-payer in a municipal or *quasi* municipal corporation will not disqualify a person for holding an office in such a municipality, or for performing any duty incident to such office, although his own personal or pecuniary interest may to some extent be affected by his action; and this is especially true in case of drainage districts, which are organized for the promotion of private interests of the land owners within such districts.

8. QUO WARRANTO—*whether the proper remedy—as to merely private rights.* Quo warranto does not lie as a remedy for the vindication of mere private rights. If a corporation exceeds its authority, when only private rights are affected, the law furnishes a remedy by private action, either at law or in chancery.

9. SAME—*improper exercise of corporate authority.* In an information against the commissioners of a drainage district, the relator set

out an attempt to levy on his land assessments in excess of benefits, without giving him notice or an opportunity in defense, and proceedings for the collection of such assessments; also, the appropriation to the use of the district of certain drains belonging to the relator without compensation, the filling up and destroying the usefulness of one or more of such ditches, and in taking and damaging a part of his land without making compensation therefor: *Held*, that such averments simply show an improper exercise of corporate or official authority on the part of the commissioners, for which the law furnishes ample remedy at his own suit, and constitute no ground for interference by *quo warranto*.

10. SAME—*information—requisites—questioning title to office.* Where an information is filed to test the question of an intrusion into or usurpation of an office, it is sufficient to allege, generally, that the defendant is in possession of the office without lawful authority.

11. SAME—*evidence—burden of proof—as to preliminary steps to the formation or enlargement of a district.* On *quo warranto* against a drainage district and its commissioners, the burden of proof is on the defendants to show the requisite petition of the land owners for the formation of or enlargement of the district. In such cases, proof of the signatures of the required number of land owners is sufficient, and proof of the other signatures is immaterial.

12. PLEADING—*anticipating defense.* The rules of pleading, as, in *quo warranto* to question the defendant's title to an office, do not require that the pleader shall anticipate that the defense will justify under an election, and show in advance the invalidity of such election. If the election is pleaded, its invalidity is a matter to be shown by replication.

13. PLEADING AND EVIDENCE—*immaterial allegations.* Where a count in an information in the nature of a *quo warranto*, after proper allegation of the usurpation of a corporate franchise, by way of more minute specifications, states various official acts of the defendants, which tend to show an abuse and not a usurpation, which are not relied on as an independent ground for prosecuting the writ, such averments of abuse will not be germane to the general allegation, and may be disregarded.

14. SAME—*relief limited to pleadings.* If the right of drainage commissioners to include an incorporated village within the limits of a drainage district is questioned by *quo warranto*, the prosecution should show, by their information, that fact. The relief granted is limited to the pleadings of the parties.

15. PRACTICE—*immaterial issues—formal finding thereon.* Where the effect of the verdict of the jury on certain issues submitted to them is decisive of the rights of the parties, a failure of the court to formally find as to other issues not left to the jury will be immaterial. But the

entry of judgment on the verdict will amount to a finding on the other issues by the court.

16.   If a party desires a formal finding by the court of issues not submitted to the jury, he should ask for it, or in some way object to the entry of judgment without it.   If he fails to do this he can not urge for error that no formal finding was announced by the court before judgment.

17.   SAME—*issues submitted—no objection—waiver.*   Where a *quo warranto* came on for trial, the court submitted to the jury the issues formed on a certain replication, each issue being followed by the words, "was it, or not, true."   No objection or exception to the submission was made by either party, and a jury was waived, except as to such issues:   *Held,* that having failed to except at the time, and having proceeded with the trial, the party could not afterward object to the mode of procedure.

18.   Where the plaintiff, by his replication, tenders issues of law, and such issues, as well as issues of fact, are submitted to a jury without objection or exception, he will not be permitted afterward to challenge the verdict on that ground.

19.   DEMURRER—*admission.*   A demurrer admits only such allegations as are well pleaded.   It does not admit matters which are not required to be alleged.

20.   APPEAL—*whether franchise involved—legal existence of drainage district—commissioners as corporate authorities.*   Where the legal existence of a drainage district, as well as the right of its commissioners to act as the corporate authorities thereof, is in issue under an information in the nature of a *quo warranto,* a franchise is directly involved, and an appeal lies from the final judgment directly to this court.

21.   ERROR WILL NOT ALWAYS REVERSE—*some good counts.*   The sustaining of a demurrer to four out of six counts of an information in the nature of a *quo warranto,* even if erroneous, is no ground for reversal, when the other counts are sufficient for the purpose of testing the right question.

APPEAL from the Circuit Court of Mason county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

This was an information in the nature of a *quo warranto,* filed on the 5th day of April, 1889, in the Circuit Court of Mason county, on the relation of James M. Samuel, Sr., charging Mark Cooper, Andreas Furrer and William H. Buchanan with having unlawfully usurped and intruded into, and with

unlawfully holding and executing the office and franchise of commissioners of the Central Special Drainage District in the county of Mason. The information contains six counts. The first count alleges, in substance, that the defendants, on the first day of December, 1888, and on divers other days within eighteen months prior to the filing of said information, unlawfully held and executed and still hold and execute the franchise and office of commissioners of said Drainage District, and during all that time have unlawfully usurped and intruded into and do so usurp and intrude into said franchise and office, contrary to the statute, etc.

The second count alleges that the defendants, on the 20th day of November, 1888, and on divers other days during said period of eighteen months, have unlawfully acted within this State as a corporation, to-wit, as the corporation of the commissioners of said drainage district, without being legally incorporated, and still do unlawfully act as such corporation without being legally incorporated, contrary to the statute in such case made and provided and to the damage of the People of the State of Illinois, and especially to the damage of the relator in this: that he is a resident and tax-payer in the town of Sherman in said county, owning and residing on his farm, to-wit: (describing a farm consisting of about 740 acres of land lying mostly within said town), on which said farm said defendants, claiming to act as such corporation, did, on the 20th day of January, 1888, at said county, as commissioners of such corporation, levy a heavy assessment for constructing drains in said district, amounting to, to-wit, $800, and being in addition to a former assessment for said purpose for, to-wit, $5000, that they had as such commissioners then and previously imposed thereon, without corresponding benefits therefor, for which assessments installments became due and payable according to the terms thereof; and to obtain payment of which, said defendants, on, to-wit, the 1st day of December, 1888, proceeded to collect from said farm by levies,

30—139 ILL.

suits, prosecutions and sales, and threaten to so collect the same in their assumed capacity of commissioners as aforesaid, notwithstanding the relator has received and can expect to receive little or no benefit therefor, and none commensurate with the amount thereof. Also, in that the defendants, assuming to act as such incorporated commissioners, have taken possession and appropriated to themselves a large ditch dug by the relator through and across a part of his said farm at a cost to him of, to-wit, $2500, and have not paid or offered to pay or in any manner compensate him therefor, though he has often requested them so to do. Also, in that the defendants, assuming such authority as commissioners, have filled up and rendered useless another large ditch dug by the relator across another portion of his said farm to an outlet to drain said farm, at a cost of, to-wit, $2000, and have paid him nothing therefor, though often requested so to do. Also, in that the defendants assuming authority as such commissioners, in the drainage of the relator's farm, have cut off from the north-west corner thereof, by a ditch forty-five feet wide and ten feet deep, about seven acres of land, without giving or offering him any compensation therefor, though often requested so to do. Also, in that the defendants are otherwise harassing and damaging the relator in their assumed capacity as such corporate commissioners, unlawfully and with malicious intent, to-wit, in said county.

The third count alleges that said defendants, for said period of eighteen months, have, and still do, intrude into and usurp and hold, and unlawfully execute the franchises and offices of commissioners of said drainage district, and so have and still do claim to act as said corporation, without being legally incorporated, and so have and still do use and exercise as such corporation powers not conferred by law, and so have and do claim to hold and exercise privileges improperly and without warrant of law, to-wit: the powers and privileges of assessing the lands and property of the relator and others over whom

said defendants claim jurisdiction for that purpose as in said district; of appropriating and taking exclusive possession of the ditches and property of the relator and others without giving or offering just compensation therefor; of taking the lands of the relator and others without such compensation; of filling up the ditches and injuring the drainage of said relator and others; of levying on and selling the lands and property of the relator and others to pay said illegal assessments, claiming jurisdiction as aforesaid for all said purposes only from and by pretended elections by persons owning lands within the claimed and alleged bounds of said alleged district, which persons are not and then and there were not citizens of the United States, entitled to vote under the Constitution and laws of this State, but were females, foreigners and minors, and which pretended elections were held in pursuance of section 54 of an act of the Legislature of this State entitled, "An Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," approved June 27, 1885, which section of said act is, as relator and this information show, invalid, illegal and contrary to the Constitution of this State, as giving to those who are not electors in said State the right to vote for and elect drainage commissioners of special drainage districts, with large powers to assess, tax, condemn and take away private property, such commissioners not necessarily being, under said enactment, citizens of the United States or voters under said Constitution, and said act is believed to be in many other respects unconstitutional and void, whereby said privileges and powers claimed and derived as aforesaid, and still claimed and exercised by the defendants, are and were improperly and without warrant. of law, so exercised by them, as coming from and being granted by and under the choice of unauthorized persons at said pretended elections held at said county on the third Tuesday of November in the years 1888, 1887 and 1886, and December 15, 1885, and at divers other times, under which elections

said defendants claim to hold the office of commissioners as aforesaid, and as coming from and being granted by said unconstitutional law, and said elections held and conducted thereunder.

The fourth count alleges that the defendants, in said county, for said space of eighteen months then last past, had unlawfully executed said franchise and offices of commissioners of said alleged drainage district, and claim to hold and exercise the powers and privileges aforesaid over said lands, drains and property of the relator without right, title and due authority of law, in that the proceedings in and by which it was attempted to extend the jurisdiction of said alleged commissioners over said lands, drains and property of said relator were illegal and not according to the statute in such case made and provided or the Constitution of the State, and especially the petition to extend the area of the alleged original district so as to include said lands of the relator was not signed by the requisite number of adult property owners of the land lying in the district as proposed to be enlarged, neither did said petition set forth the boundaries or describe the tracts of land, or contain the statements required by the drainage law, nor was notice of the presentation of said petition required by said law given and published as therein required, either as to form or time of notice. That the notice given required those interested to appear before the defendants as commissioners, they being interested parties and having themselves gotten up said petition and secured the signers thereto; that upon such petition they made or attempted to make the annexation of said land, without the intervention of any other court or tribunal, well knowing that many of the signatures to said petition were fraudulent, and not those of adult *bona fide* land owners, and that if the petition had been freed from said fraudulent signatures, it would not have been signed by the number of landowners required by said statute; that the proceedings of the defendants were otherwise irregular and void in that they did

not hold an adjourned meeting to hear objections, or themselves go on the land and make report with plans and specifications to such adjourned meeting, as required by section 52 of said act, but made the pretended annexation at the first meeting; that the proofs of publication as required by said act were not filed at or before said meeting; that the notices of said meeting were not posted or mailed as required by said act; that the order of annexation was informal, uncertain and contrary to the statute; that the lands of the relator so attempted to be annexed are and were not of the class specified by said act, viz, wet and overflowed lands needing drainage more than they already had, or that would or could be benefited thereby, inasmuch as the relator had made all necessary or useful drains on and for said land, with sufficient outlets for their complete drainage, before said pretended district was attempted to be enlarged over them, or attempted to be formed. That said assessment proceedings were contrary to the rights of the relator, in that no notice of the making or filing of the assessment roll was ever given, and the relator never in fact had an opportunity to contest the same, or show that the assessment exceeded the benefits to the land, as in fact was the case; in that the taking of the relator's drains and ditches without having given or offered him any compensation therefor, or for the work, labor and expense of constructing the same, amounting to more than $2000, was and is contrary to the statute, and exceeded the powers of the defendants; in that the filling up of the relator's ditch as aforesaid, thereby turning the surface water back on relator's land without providing means for its escape, was likewise in excess of their powers, and the taking and cutting off of the relator's land as aforesaid without giving him compensation or damages therefor was also in excess of their powers; that they have trespassed upon and appropriated the lands of the relator by piling dirt taken from their ditch without authority, all of which the defendants

have done for said period and are still doing, under the assumption by them of authority as such commissioners.

The fifth count alleges that the defendants, for said space of eighteen months, have unlawfully held and exercised said franchise and offices, and still do hold and exercise the same unlawfully, assuming the powers, authority and privileges as aforesaid, especially the power of making and collecting assessments on the lands of or within said alleged district, and especially over the lands of the relator; that the first assessment on the said lands was for a total of $113,862, made December 2, 1886, without notice or chance of appeal or chance in fact to show, as is the fact, that the proportion of said assessment levied on relator's land far·exceeded and exceeds the benefits of any and all ditches made or proposed by said alleged commissioners; that notwithstanding this, the defendants, on, to-wit, January 2, 1888, made another assessment on the lands claimed to be in said district, including the lands of the relator, amounting to $17,070, without notice or any chance of contest or appeal. Also that said second assessment is beyond all benefits or claim of actual benefits derived from said ditches made or proposed, so far as the relator's land is concerned; that to collect the first installment of said first assessment, said commissioners, in August, 1887, commenced and have prosecuted a suit in chancery against the relator and his wife for the proportion levied on relator's lands, according to the scale of benefits imposed thereon by the defendants; that in said case said alleged commissioners succeeded, by a breach of a stipulation between their attorney and the relator's attorney, in getting a default and decree in the Circuit Court of Fulton county to which the suit had been removed, without the knowledge of the relator until too late to have the same set aside on motion; that the relator has filed his bill in the Circuit Court of Mason county to have said decree set aside; that under said fraudulent decree, the defendants have caused all the relator's lands to be sold by the master in chancery of

Mason county to one Wallace, one of the attorneys of said commissioners; that said lands were in fact purchased by said Wallace for and on behalf of said pretended commissioners which transaction is in excess of the powers and authority of said defendants and therefore illegal and void; all of which actings and doings of the defendants are contrary to the form of the statute, etc.

The sixth count, which was subsequently filed, by leave of the court, as an additional count, alleges, that the defendants have, during said period of eighteen months and longer, been and still are, usurping, intruding into and unlawfully holding and executing the offices and franchise of commissioners of the Central Special Drainage District in the county of Mason, and claiming to hold and exercise the powers, privileges and franchises aforesaid, and exercising the same as aforesaid, without being legally entitled so to do, and without warrant of law, and without being legally incorporated as such incorporation, having such franchises, privileges and authority, and that the statute under which only they claim or ever have claimed the right to act, to-wit, "The Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," approved June 27, 1885, is nugatory and void to confer said powers, privileges and franchises, because it is in conflict with the Constitution of the United States, in authorizing the annexation of new areas of land to drainage districts already formed by the commissioners of such district without requiring notice of such annexation to be first given to all whose property is affected or liable to be affected thereby; in authorizing such annexation to be made by the commissioners of such district, an interested tribunal, without giving any appeal from their decision; in authorizing assessments to be made on the lands of citizens without first giving them notice thereof and ample chance and time to show that such lands can not be benefited to the amount of such assessments by the drains, ditches and improvements for which such

assessments are made ; in subjecting the property of such citizens to such assessments by a corporation essentially private, and composed of persons and having for its electors persons not required by the statute to be citizens or voters of said State or of the United States, having private purposes for its object, and proceeding after the manner of a private corporation and not being a municipal body, and authorizing taxation of the lands of the district belonging to such citizens by such corporation, and without any practical limit of such taxation to the benefits to such lands ; and that by said unconstitutional provisions of said statute used and exercised by the defendants, in assuming to annex the relator's lands to said district, and in levying such assessments, without notice to the relator, the relator has been and is damaged, and other good and lawful citizens of the United States and of this State have been and are damaged and oppressed.

A general and special demurrer to the several counts of said petition having been interposed by said defendants, said demurrer was sustained to the second, third, fifth and sixth, counts, and overruled to the first and fourth counts. To said first and fourth counts the defendants filed five pleas. The first plea sets out in detail the proceedings commenced October 21, 1885, in the County Court of Mason county, under the Drainage Act of June 27, 1885, for the organization of said special drainage district, embracing lands situate in at least three towns in said county, said plea showing the taking of each of the several steps and proceedings prescribed by said Drainage Law for the full and complete organization of said district and the election and qualification of said defendants as the commissioners of said district, and their entry upon the duties of their office. Said plea also alleges the presentation to said commissioners, on the first day of May, 1886, of a petition for the enlargement of the boundaries of said district by attaching thereto new areas of land which were involved in the same system of drainage and which required for outlets.

the drains of said district, the lands of the relator being included in the territory thus sought to be annexed to said district, and the plea alleges the taking of each of the several steps and proceedings required by said Drainage Law for the proper enlargement of said district by the annexation thereto of said lands. It also alleges the subsequent election and qualification of the defendants as such commissioners, as their terms of office severally expired, in manner and form as provided in said Drainage Law, so as to vest them with the title to said office at the time of the commencement of this suit. To said plea the state's attorney filed two replications, one containing a general traverse of all the allegations of the plea, and the other traversing its allegations in detail and setting up certain irregularities and insufficiencies in the proceedings for the organization and for the enlargement of said district, and in the elections of said commissioners, and among them, that at said elections, women voted and determined the result thereof. Issue was taken on said replications.

The second plea alleges, in substance, that the information is prosecuted at the special instance and for the benefit and advantage of the relator, and that at the hearing and determination by said commissioners of the petition for the enlargement of said drainage district, the relator appeared in person and by attorney and interposed and filed exceptions to said petition and resisted the granting of the prayer thereof, and that such proceedings were then and there had in the matter of said petition and the relator's exceptions thereto, that it was found by said commissioners that the material facts stated in said petition were true, and that the prayer of said petition should be granted, and that an order to that effect was thereupon made by said commissioners, whereby the relator's exceptions were disallowed and overruled and the validity of said proceedings adjudicated and determined, and that said order of said commissioners still remains in full force and effect.

The third plea alleges, in substance, that said information is prosecuted at the instance and request and for the special benefit and advantage of the relator; that after the entry of the order for the enlargement of said drainage district, several of the owners of the land within the area attached to said district, the relator being one, entered into a mutual agreement in writing, by which they agreed with each other, that they would prosecute or cause to be prosecuted the proper legal proceedings for quashing, annulling and avoiding the record of the said enlargement of said district, and would contribute and pay the necessary expenses thereof, and that thereupon and in pursuance of said agreement, a writ of *certiorari* was sued out of the Circuit Court of Mason county, directed to said commissioners, commanding them to certify and bring up to said court the record of the said proceedings for the enlargement of said district; that said proceedings were thereupon duly certified to said court, and that afterwards, on motion of said commissioners, said writ of *certiorari* was quashed by said court, and that on appeal by said land owners to the Appellate Court said order quashing said writ was in all things affirmed.

To said second and third pleas a replication was filed alleging that the information was presented and was being prosecuted by the state's attorney, in the name and by the authority of the People of the State of Illinois, under and in pursuance of the statute in such case made and provided, against the defendants because of their unlawful acts by them done and performed, and not for the cause in said pleas alleged. A further replication to said third plea denies that the parties therein named, in pursuance of any agreement between them, ever commenced or carried on any prosecution in the name of the People of the State of Illinois against said defendants or either of them for or on account of the illegal acts complained of in the information, and that the proceeding set up in said plea by way of estoppel was only a civil proceeding to bring the record of the action of said commissioners on the petition to

enlarge said district before said court for review.    To both of said replications a *similiter* was added.

The fourth plea alleges that said information was filed and is prosecuted at the special instance and procurement and for the sole benefit and advantage of the relator; that to procure a right of way 120 feet wide and 920 feet long for the main outlet ditch of said district, and which runs across a certain tract of land owned by the relator and included within the area of land attached to said district by said extension of the boundaries thereof, said commissioners impleaded the relator in the County Court of Mason county, in a suit for the condemnation of said right of way and the assessment of damages therefor to the relator, in which suit the relator made default, and thereupon such proceedings were had in such suit that it was considered by the court that the relator have and recover of said commissioners for his said damages the sum of $10, which was tendered to said relator, and that to procure another right of way for one of the other ditches of said district across another tract of land owned by the relator which was also included within the lands attached to said district as aforesaid, said commissioners impleaded the relator in another suit in said County Court for the condemnation of said last mentioned right of way, and the assessment of damages to the relator therefor, and that the relator appeared in said suit both in person and by attorney and maintained and defended his rights and urged a recovery of damages therein, and that such proceedings were had in the latter suit that it was considered by said court that the relator have and recover of said commissioners for his said damages the sum of $500 and also the costs of said suit, and that said damages were afterwards tendered to said relator by said defendants, and the defendants aver that the relator is thereby estopped and barred from calling in question or assailing the validity of the extension of the boundaries of said district and from prosecuting said writ of *quo warranto.*

The fifth plea alleges that said information and writ of *quo warranto* are prosecuted at the special instance and procurement and for the sole benefit of the relator; that the relator owned and still owns lands, and resided and still resides in said district, and that mainly to procure the necessary funds with which to construct the combined system of drainage in said district, a classification of the lands and premises in said district having been made out and confirmed, said commissioners, according to their best judgment, ordered that the sum of $113,862 be raised by special assessment upon the lands of said district which were benefited; that in the judgment of said commissioners the payment of said tax for the completion of said work would be too heavy a burden upon the owners and persons interested to pay in time to be used in said work; that thereupon, after said levy had been made, said commissioners postponed the payment thereof not longer than fifteen years from the date of said levy; that for the construction of said proposed work, said commissioners borrowed of divers and sundry persons the sum of $92,000, and secured the payment thereof by the bonds of said district, bearing interest at not to exceed seven per cent per annum, which said bonds became and are a lien on said assessment or levy, upon the faith and credit of which they were issued; that said bonds are owned by divers and sundry persons who are innocent holders thereof, and that with said moneys so borrowed, and other moneys, said commissioners in the years 1887 and 1888 constructed said combined system of drainage in said district, at an expense of about $115,000, of all which the said petitioners, as well as the said relator, had full notice and knowledge, and interposed no objections thereto, and acquiesced and encouraged the same, and the defendants therefore aver that the petitioners and the relator are estopped and barred thereby from prosecuting their information and writ.

To the fourth and fifth pleas a replication was filed alleging, that it is not true that the information was filed and is prose-

cuted at the special instance and procurement and for the sole benefit and advantage of the relator, but that it was commenced and is carried on by the state's attorney in the name and by the authority of the People of the State of Illinois and on their behalf, for and on account of the wrongful acts of the defendants against the peace and dignity of said People.

A further replication to said fifth plea alleges that the relator never accepted or took from the defendants said damages alleged to have been awarded to him, but has always refused to recognize the defendants receiving or holding the office or franchise of commissioners of said drainage district.

A further replication to the third, fourth and fifth pleas alleges, that this prosecution was commenced and is carried on in the name of the People of the State of Illinois against the defendants for usurping, intruding into and unlawfully holding and misusing the offices and franchises of commissioners of said drainage district and for no other reason or behalf, and that the matters and things in said pleas alleged as and for an estoppel of this prosecution, were not done or adjudicated by and between the parties to this suit, or in any suit or proceeding where said People in their sovereign capacity were a party, and that in none of said proceedings was or could the question be raised or adjudicated whether the defendants had usurped, intruded into, unlawfully held or had misused the franchises or offices of commissioners of said drainage district.

A further replication to said third, fourth and fifth pleas expressly denies all the matters and things in said pleas alleged. Upon all of said replications issues of fact were taken.

The cause coming on to be heard, the parties, by stipulation, waived a jury, except as to the issues expressly submitted to the jury by the court. The issues thus submitted consisted of those raised by the second replication to the defendant's first plea. Said issues were formulated in said replication in eleven separate clauses, and they were submitted to the jury in the

form in which they there appear, with the addition to each of the words: "Was it or was it not true?" The issues thus submitted were as follows:

"*Clause 1*—That the petition for the original formation of said drainage district was signed, and notice of the hearing thereof given, and the form and contents of said petition and notice were as required in and by said act to provide for drainage for agricultural and sanitary purposes, concluded in said plea, Was it, or not, true?

"*Clause 2*—That the election for commissioners vouched in said plea, and each of them, or any of them, were and are a warrant for the action and doings of said defendants complained of in said information, because at said elections, and each of them, women voted and determined the result thereof contrary to the constitution and laws of the United States of America and laws of Illinois. Was it, or not, true?

"*Clause 3*—That the petition for the enlargement of said district was signed, and notice of the hearing thereof given, and form and contents of said petition and notice are and were as required in the above mentioned act. Was it, or not, true?

"*Clause 4*—That the new area of land so attempted to be added to said district did require for outlet the drains, or any drain, of said district made or proposed to be made, but large tracts thereof had sufficient drainage and outlet before the said formation or alleged formation of said district. Was it, or not, true?

"*Clause 5*—That there were several infant owners of lands in said new areas proposed to be attached, at the time of said meeting of said acting commissioners and their alleged annexation of said areas; that said infants were notified of said meeting, or represented thereat by guardian or otherwise, and said acting commissioners had jurisdiction to annex their said lands, or any lands in said new areas, without such representation. Was it, or not, true?

"*Clause 6*—That there were persons owning lands in said new areas under guardianship, not represented at such meeting by their said guardian, and over whose lands said acting commissioners acquired no jurisdiction for annexation purposes. Was it, or not, true?

"*Clause 7*—The said commissioners did go upon said lands proposed to be annexed, and report to an adjourned meeting as required in said act. Was it, or not, true?

"*Clause 8*—That the petition for annexation was signed by a majority in number of the adult owners of land lying in the new area proposed to be annexed, or of the district as proposed to be enlarged, owning in the aggregate more than one-third thereof, or either thereof, or by the owners of the major part of the lands constituting one-third or more of the owners of the land in said new areas or said district as proposed to be enlarged. Was it, or not, true?

"*Clause 9*—That large areas of land in said new areas were not benefited at all by the ditches made or proposed to be made by said district, and have not been so benefited, though assessed therefor. Was it, or not, true?

"*Clause 10*—That the new areas of land, and large portions thereof, were not involved in the same system of drainage as that proposed for said original district. Was it, or not, true?

"*Clause 11*—That said defendants have misused the franchise of drainage commissioners, in their actings and doings as such, by taking and injuring the property of a citizen and citizens of said State of Illinois without just compensation therefor; by taking the ditches of such citizen and citizens without allowing anything therefor; by flooding the lands of such citizen and citizens without any compensation therefor; and in other ways, as shown in said information."

The jury, after hearing the evidence, returned a general verdict upon said issues in favor of the defendants. The state's attorney thereupon moved the court to set said verdict aside and award a new trial on the grounds, that the verdict was

contrary to the evidence; that improper evidence was allowed to go to the jury; that competent and proper evidence offered was excluded, and the issues in the cause were not presented to the jury in manner and form as required by law. Said motion for a new trial was overruled by the court, and judgment was thereupon rendered in favor of the defendants in accordance with the verdict. The relator now brings the record to this court by appeal.

Mr. THOMAS N. MEHAN, State's Attorney, and Mr. JAMES H. SEDGWICK, for the appellants:

The circuit court of Peoria county having granted leave to file the information returnable into the circuit court of Mason county, the case was properly in the latter court. Rev. Stat. chap. 37, sec. 28; chap. 112, sec. 1; *Welch* v. *People,* 38 Ill. 20.

That *quo warranto* is a proper remedy, see *Osborn* v. *People,* 103 Ill. 224; *Lees* v. *Drainage Comrs.* 125 id. 47; *Samuels* v. *Drainage Comrs.* id. 536; *Evans* v. *Lewis,* 121 id. 482.

That an appeal lies to this court by the People, see Rev. Stat. chap. 112, sec. 7.

Article 7, section 1, of the constitution, is a limitation of the right of suffrage to the persons therein named, *(Beardstown* v. *Virginia,* 76 Ill. 34,) and applies to elections in municipal corporations. *Johnson* v. *People,* 94 Ill. 507.

The constitutionality of a statute may be tested on *quo warranto. Hinze* v. *People,* 92 Ill. 407.

*Quo warranto* is the proper remedy against a public corporation exercising powers not conferred by law, and against any person unlawfully usurping, intruding into or unlawfully holding or executing any office or franchise. *People* v. *Board of Education,* 101 Ill. 308; *State* v. *Bradford,* 32 Vt. 50; *Keigwin* v. *Drainage Comrs.* 115 Ill. 352.

It lies when any new jurisdiction or public trust is exercised without authority, *(People* v. *Insurance Co.* 15 Johns. 389,) or

for misuser or non-user thereof. *People* v. *Improvement Co.* 103 Ill. 492.

The information is statutory and remedial, and will receive a liberal interpretation to effect the object. *Commonwealth* v. *Dillon,* 61 Pa. St. 488.

When the information is to test the right of respondents to hold a public office there need be no relator, and, if there is one, his interest is immaterial. *Cheshire* v. *People,* 116 Ill. 493.

The charges against the commissioners are certainly stated with definiteness enough for an information. It only needs a general statement of usurpation of powers and franchises. *Railroad Co.* v. *People,* 84 Ill. 426; *People* v. *Improvement Co.* 103 id. 511.

After stating the franchise usurped or abused, the information calls upon the defendant to show his warrant. *People* v. *Insurance Co.* 15 Johns. 388; *People* v. *Van Slyck,* 4 Conn. 297.

The defendant must either disclaim or show title for his acts. (*Holden* v. *People,* 90 Ill. 434; *Railroad Co.* v. *People,* 84 id. 426.) He must aver and prove his title specifically and particularly, and must show validity on the face of his plea. *Clark* v. *People,* 15 Ill. 217; *Carrico* v. *People,* 123 id. 198; *People* v. *Koerner,* 21 id. 67; *Simons* v. *People,* 18 Ill. App. 588.

The People are not bound to show anything. *Clark* v. *People,* 15 Ill. 217.

The court erred in submitting issues of law to the jury. The verdict should have been set aside. In *quo warranto,* issues of fact may be tried by a jury. *People* v. *Forquer,* Breese, 110; *People* v. *Van Slyck,* 4 Conn. 306; *Commonwealth* v. *Allen,* 70 Pa. St. 465; *People* v. *Cicot,* 15 Mich. 326.

Section 50 of the Drainage law requires notices to be posted in at least five public places in each township. There is no proof of the posting of more than four in public places. Another was posted, but it does not appear it was posted in a public place. That notice is necessary and jurisdictional, see *Turn-*

*pike Co.* v. *Hall,* 2 Harr. 337; *State* v. *Newark,* 1 Dutch. 412; *State* v. *Jersey City,* 4 Zabr. 665; *Stewart* v. *Palmer,* 74 N. Y. 183; *San Mateo Co.* v. *Railroad Co.* 13 Fed. Rep. 752; *Burns* v. *Railroad Co.* 15 id. 177; Welty on Assessments, sec. 252.

Where an adjourned meeting is required by law, the record must show that it was held, or jurisdiction fails. *Commissioners* v. *Harper,* 38 Ill. 109.

In order to have jurisdiction to annex new areas, they must be involved in the same system of drainage as that of the original district. If the case does not fall within the designated class where the power is applicable, the corporation has no jurisdiction, and no authority to move a step in the case. *Hayes* v. *Appleton,* 24 Wis. 544; *Delphi* v. *Startzman,* 104 Ind. 346.

The law required that guardians *ad litem* should have been appointed for the minors owning land.

The commissioners being owners of land in the district, and interested in their action, were disqualified from acting. *State* v. *Castlebury,* 23 Ala. 88; *Sanburn* v. *Fellows,* 22 N. H. 473; *Regina* v. *Suffolk,* 83 Eng. C. L. 416; *Railroad Co.* v. *Adler,* 56 Ill. 346; Freeman on Judgments, sec. 145.

The commissioners were required by law to pay for relator's ditches taken and appropriated for the use of the district. Drainage law, sec. 22.

The right of trial by jury shall be held inviolate in all trials of claims for compensation, when, in the exercise of the said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right. Const. 1870, art. 11, sec. 14; art. 2, sec. 13.

The above article of the constitution abrogated all laws for the assessment of damages by commissioners or supervisors. *Kine* v. *Defenbaugh,* 64 Ill. 291.

The flooding of land so as to impair its usefulness is the taking of it for public use without compensation, (*Nevins* v. *Peoria,* 41 Ill. 502,) or any direct, physical disturbance of a

right, either public or private, enjoyed in connection with property. *Rigney* v. *Chicago*, 102 Ill. 64.

When a case falls within that provision of the constitution, the charter of a corporation authorizing the act is no defense. *Rigney* v. *Chicago*, 102 Ill. 64.

The constitution gives the injured party the right to compensation in all cases where, but for some legislative enactment, a right of action would lie at common law. *Rigney* v. *Chicago*, 102 Ill. 64.

Into all such abuses of power by a corporation the State may inquire by *quo warranto*. It is a direct proceeding. *Lees* v. *Drainage Comrs.* 125 Ill. 47.

In order to be pleadable as a bar, the former action must have been between the same parties, (*Town of Lyons* v. *Cooledge*, 89 Ill. 529,) and the same matter must have been in question. *Biggins* v. *People*, 106 Ill. 270; *Yeates* v. *Briggs*, 95 id. 79.

In the *certiorari* proceeding, pleaded by these defendants, the People were not parties. If their name was used it was a misnomer, and improper. *Certiorari* is but a writ of error to bring up the record of an inferior tribunal. *Haines* v. *People*, 97 Ill. 166.

On *quo warranto* the inquiry is much broader, and facts may be inquired into whether of record or not. *People* v. *Koerner*, 21 Ill. 67; *People* v. *Forquer*, Breese, 110; High on Ex. Rem. "Quo Warranto," 465; *People* v. *Van Slyck*, 4 Conn. 297; *Attorney General* v. *Barstow*, 4 Wis. 567; *State* v. *Steers*, 44 Mo. 223; *Commonwealth* v. *Allen*, 70 Pa. St. 465; *People* v. *Cicot*, 15 Mich. 326.

The burden of proof was on defendants to prove the signatures of the signers of the petition. *Sharp* v. *Spier*, 4 Hill, 76; *Mix* v. *Ross*, 57 Miss. 125.

That a legal petition was necessary to give the defendants jurisdiction to annex, will not be questioned. *Warne* v. *Baker*, 35 Ill. 385; *Hunt* v. *Railroad Co.* 121 id. 639.

The inclusion of the village of Easton in the drainage district was illegal. Lot owners were not authorized to sign the petition. The classification and assessment of the lots within the village were without jurisdiction, and as the annexation order depends upon a valid petition and notice, as it can not be separated, and part held good and part bad, the whole must fall. *City of Peru* v. *Bearss,* 55 Ind. 576; Dillon on Mun. Corp. sec. 421.

Mr. E. A. WALLACE, and Mr. JOHN W. PITMAN, for the appellees:

All objections to the regularity of the proceedings in the courts below are waived, and will not be discussed.

The constitution defining the qualification of voters does not apply to the elections of commissioners of drainage districts. The statute authorizing adult owners of land, whether foreigners or women, to vote for commissioners, is a valid law. *Davenport* v. *Commissioners,* 25 Ill. App. 92; *Moore* v. *People,* 106 Ill. 376; *Blake* v. *People,* 109 id. 504; *Kilgour* v. *Commissioners,* 111 id. 342; *Owners* v. *People,* 113 id. 296.

*Quo warranto* will not dissolve a drainage district or oust its commissioners because they may commit a trespass on some one's land. High on Ex. Rem. secs. 617, 618, 680; 1 Dillon, sec. 112; *Chicago* v. *People,* 80 Ill. 496.

The law presumes that officials will pursue its requirements. *Munn* v. *Burges,* 70 Ill. 604; *Conwell* v. *Watkins,* 71 id. 488.

There being no *misuser,* no "exercise of powers not conferred by law," and no "forfeiture," the demurrer was properly sustained. If questions of law were commingled with those of fact, it was done at the instance of appellants, and they can not complain.

Appellants should have called the attention of the court to the failure to find the issues not left to the jury. It is now too late to complain. (*Bank* v. *Batty,* 4 Scam. 200.) Besides,

the complaint is trivial. *Goucher* v. *Patterson,* 94 Ill. 525; *White* v. *Stanbro,* 73 id. 575.

Relator was not entitled to pay for his ditches, except by way of credit on his assessment. *People* v. *Chapman,* 128 Ill. 496.

The finding of the posting of the notices must be presumed to be true. *Munn* v. *Burges,* 70 Ill. 604; *Conwell* v. *Watkins,* 71 id. 488.

An adjourned meeting of the commissioners is not required on a petition to enlarge the district.

In a case like this no guardian *ad litem* is required to be appointed.

The interest of the commissioners as land owners of the district does not disqualify them from acting.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

There can be no doubt that the appeal in this case is properly taken directly to this court from the trial court. The proceeding is by information in the nature of a *quo warranto,* brought against the defendants to test their right to hold and exercise the office and franchise of commissioners of Central Special Drainage District, in Mason county, and the defendants, by their pleas, have alleged in detail the facts necessary to invest them with the title to said office and franchise. The facts thus alleged consist of the various proceedings which are claimed to have resulted in the legal organization of said drainage district, and in the subsequent legal enlargement of the boundaries of said district so as to embrace additional areas of land, including the lands of the relator, and also of the proceedings by which the defendants claim to have been elected and inducted into the office of commissioners of said district. All of these allegations are put in issue by the replications. The defendants' title depends upon the legality and sufficiency of these various proceedings, and the suit therefore involves,

not only the right of the defendants to hold the office to which they claim to have been elected, but, incidentally at least, the legal existence of said drainage district as a corporation, and its right, through its commissioners, to enjoy and exercise the franchises, powers and privileges which the statute gives to corporations of that character. It thus appears that the legal existence of the district, as well as the right of the defendants to act as the corporate authorities thereof, is in issue, and that the final judgment in the case must be, in effect, a judicial affirmance or disaffirmance of both. It is clear therefore that a franchise is involved, within the meaning of the statute defining the cases in which appeals may be taken directly from the trial court to this court.

A considerable number of propositions are submitted on behalf of the relator as grounds for the reversal of the judgment of the Circuit Court, and so far as we deem them of sufficient importance to merit discussion, they will be considered in their order. The first point made calls in question the action of the court in sustaining the defendants' demurrer to the second, third, fifth and sixth counts of the information. The form in which the information is presented would seem to indicate some misapprehension on the part of counsel as to the proper scope and object of a proceeding by *quo warranto*. This misapprehension is manifested by an apparent attempt to combine in the information matters which are properly remediable by this writ with mere private grievances of the relator for which the law furnishes him a proper remedy, by a private action, either at law or in chancery. *Quo warranto* is not a remedy provided for the vindication of mere private rights. "The State does not concern itself with the quarrels of private litigants. It furnishes them sufficient courts and remedies, but intervenes as a party only where some public interest requires action. Corporations may, and often do, exceed their authority, where only private rights are affected. When these are adjusted, all mischief ends and all harm is

averted. But where the transgression has a wider scope, and threatens the welfare of the people, they may summon the offender to answer for the abuse of its franchise, or the violation of its corporate duty." 1 Beach on Corporations, sec. 58.

In those portions of the information to which the demurrer was sustained the relator attempts to set out and avail himself as a ground for issuing the writ, of the action of the commissioners in attempting to levy upon his land assessments in excess of the benefits which said land would receive from said proposed system of drainage, and that too without giving him notice or affording him an opportunity to be heard in relation thereto, and in instituting various proceedings for enforcing the collection of such assessments; in taking and appropriating to the uses of the district certain drains which the relator had already constructed on his own land at a large expense without compensating him therefor; in filling up and thus destroying the usefulness of one or more of said ditches, and also in taking portions of the relator's land for the construction of the ditches of the district, and damaging other portions of his land, without making or tendering him compensation therefor. These allegations, if true, simply show an improper exercise of corporate or official authority on the part of the commissioners for which the law furnishes the relator ample and sufficient remedies at his own suit, and which therefore constitute no ground for interference by the people in their sovereign capacity by *quo warranto.*

It may be further noticed that neither count of the information is based upon an allegation of an abuse of corporate or official authority, but solely upon a want of it. The first count alleges, generally, that the defendants, for the period of eighteen months next prior to the filing of the information, had unlawfully held and exercised and still do hold and exercise the franchise and office of commissioners of said drainage district, and had during all that time usurped and intruded into said franchise and office, and the same allegation, in sub-

stance, is contained in each of the other counts. In each of the counts subsequent to the first, the pleader, after making such general allegation, proceeds, merely by way of more minute specifications of the usurpations alleged, to state various official acts of the defendants in their alleged capacity of commissioners, most, if not all of which tend to show an abuse and not a usurpation of corporate or official authority. In none of the counts do the acts thus specified seem to be set out or relied upon as an independent ground for prosecuting the writ, but merely as specifications under the general charge of usurpation. It is clear that allegations of this character are not germane to and do not tend to sustain the general allegation, and as they are not put forward as a substantive and independent ground for relief, they may be wholly disregarded.

But as we are disposed to view that case, it is unimportant for us to determine whether those counts of the information to which the demurrer was sustained were or were not sufficient in law. The sole purpose of the information is, to require the defendants to show by what warrant they are holding and exercising the office and franchise of commissioners of said drainage district and if found guilty of unlawfully usurping and intruding into said office and franchise, to have them ousted therefrom. If then the two counts as to which the demurrer was overruled are sufficient for that purpose, neither the relator nor the people have any just ground of complaint. The rule of pleading in cases of this character is, that where an information is filed to test the question of an intrusion into or usurpation of an office, it is sufficient to allege generally that the defendant is in possession of the office without lawful authority. *People* v. *Woodbury*, 14 Cal. 43; *People* v. *Flynn*, 16 id. 358; High on Extraordinary Remedies, 713. Each of the counts of the information before us as we have already said, contain, in substance, such general allegation. Except then as to defects pointed out by special demurrer—and as to those we express no opinion—they may have been sustained.

But none of them receive any aid from the special averments therein contained, and rejecting those, they are substantially identical. Whether then the demurrer was sustained to four of its counts properly or improperly, the remaining counts being sufficient to enable the prosecution to obtain all the relief to which it could in any event be entitled, the sustaining of the demurrer to the four counts, even if erroneous, wrought no prejudice to the prosecution, and is therefore no ground for reversing the judgment.

But it is claimed that by the third count, which is one of those to which the demurrer was sustained, a question as to the constitutionality of section 54 of the Drainage Act under which the defendants claim their election is so preserved in the record as to be reviewable here. Said section provided that at all elections held under said act, every adult owner of land in the district, whether residing within or without the district, shall be a voter, if a resident of the county in which the district or some part of it lies. This is said to be in conflict with section 1 of article 7 of the Constitution which, in fixing the qualifications of legal voters at elections, provides, that every person having resided in this State one year, in the county ninety days, and in the election district thirty days next preceding any election therein, who was an elector in this State April 1, 1848, or obtained a certificate of naturalization before any court of record in this State prior to January 1, 1870, or who shall be a male citizen of the United States above the age of twenty-one years, shall be entitled to vote at such election. The allegation of said third count is, that at the several elections at which the defendants claim to have been elected, females, aliens and minors voted, and it is insisted that, as the allegations of said count are admitted by the demurrer, the facts thus alleged, which tend to show the illegality of such elections, stand admitted.

It should be remembered, however, that the demurrer admits only such allegations as are well pleaded, and as the rules

of pleading did not require the prosecution, in drafting the information, to anticipate that the defendants would justify under said elections and show in advance the invalidity of such justification, said allegation in the third count can not be regarded as having been properly pleaded, and so is not admitted. The invalidity of said election was matter to be set up by the State's attorney by way of replication, and he appears to have done so, in part at least, by alleging in his second replication to the defendants' first plea, that at said elections women voted and determined the result. Upon that allegation an issue of fact was formed which was submitted to the jury for trial, and which was found against the prosecution.

It is next insisted that the court erred in submitting certain issues of fact to the jury, and in rendering judgment without making itself a formal finding upon the issues not thus submitted. It appears that when the cause came on for trial, the court submitted to the jury the several issues formed upon the second replication to the defendants' first plea, the several allegations of said replication being submitted in the form in which they appear therein, each being followed by the words: "Was it or not true?" Upon such submission no objection or exception was taken on behalf of the people, but both parties, when such submission was made and in view of it, expressly waived a jury except as to the issues so submitted to them by the court. Whether the mode in which said submission was made was regular or not, the people are in no position to question or complain of it now. Having failed to except at the time, and having proceeded with the trial tacitly if not expressly consenting to and approving the mode of submission adopted, they can not now insist that it was erroneous.

But it is said that the court, after the jury had heard the evidence, gave to the jury certain instructions as to the form of their verdict upon the various issues submitted, and that exceptions to such instructions having been preserved on be-

half of the People, the question of the propriety of the mode in which the case was submitted to the jury is open for review. This we think is a misapprehension. Assuming the propriety of the submission, the instructions were clearly correct, and as the People are in no position to question the former, they can not successfully assign error upon the latter.

The further point is made that the issues submitted to the jury presented to them for their decision questions of law as well as of fact. This to a certain extent is true, but the fact that the replication tendered issues of law is primarily the fault of the state's attorney, as it is his pleading, and after having allowed the issues thus formed to be submitted to and passed upon by the jury without objection or exception, he can not now be permitted to challenge the verdict on that ground.

Nor do we think it material that the court failed to find upon the issues not submitted to the jury. The defendants, by their first plea, alleged in detail all the facts upon which they based their right to hold and exercise the office and franchise of commissioners of said drainage district. The plea, if true, was a complete defense, and established in the defendants a legal title to said office and franchise. The second replication to said plea traversed in detail each of the material facts thus alleged, and the issues thus formed on said replication having all been found in favor of the defendants, the effect of the verdict is, to establish the truth of said plea in all its parts. One good and complete defense having thus been found in favor of the defendants, they were entitled to a judgment, and the issues formed on the other pleas are no longer material. At least it may be said that none of the issues as to which the jury was waived, if found either way, could have been of any avail to the prosecution, in view of what the jury actually found.

Furthermore, the court heard all the evidence adduced at the trial, and if the trial is to be regarded as having proceeded

as to part of the issues by the jury and as to the residue by the court, the action of the court in refusing the People a new trial and in giving judgment in favor of the defendants, necessarily implied and involved the finding of all the material issues submitted to the court. True, the record fails to show any formal finding of those issues by the court, but no objection seems to have been made by the prosecution to the entry of judgment on that ground. The motion for a new trial was not based to any extent upon the want of such formal finding, nor was any motion in arrest of judgment interposed alleging that ground. If the prosecution had desired a formal finding by the court upon the issues not submitted to the jury, they should have asked for such finding, or at least have in some way interposed an objection to the entry of judgment without it. Having failed to do so, they can not now be heard to complain that no such formal finding was announced by the court.

It is next insisted that the verdict of the jury is unsupported by the evidence, in that it is not shown that the notice of the presentation and time of hearing of the petition for the enlargement of said drainage district was posted up in five public places in the township of Kilbourne, one of the three townships in which said district is situated. The evidence on that point consists of the affidavit of one person that he posted up two notices in two public places in said township; of another person that he posted up two notices in two other public places in said township; of still another person that he posted up a notice in said township without stating whether the place where he posted it was a public place or not, and a certificate of the county clerk of Mason county stating, among other things, that he had caused five copies of said notice to be posted up in five public places in said township. All of these notices are shown to have been in the proper form and to have been posted up within the time prescribed by the statute.

Section 50 of the Drainage Act prescribes the notice to be given of the time and place of the hearing of the petition for

the organization of special drainage districts, and, as we held in *Drainage Commissioners* v. *Griffin*, 134 Ill. 330, its provisions should, by construction, be held to apply to proceedings for the enlargement of the boundaries of such districts. Said section provides, that the county clerk shall give notice, among other things, by posting notices in at least five public places in each township in which the proposed district or any part of it shall lie, and requires him to file his certificate of the posting of such notices in each township, if the same or any part thereof are posted by him, and the affidavits of all persons posting such notices or any of them, and declares that such certificate and affidavits shall be evidence of the facts therein stated.

If the case rested solely upon the affidavits of the persons who claim to have posted notices in the township of Kilbourne, it might perhaps be justly claimed that there was a failure to show that more than four of said notices were posted in public places. But we have the certificate of the clerk that he caused five notices to be posted in five public places in said township, and the statute makes his certificate evidence of the facts therein stated. It may be said that he was not required to file his certificate except where he posted the notices himself, and that as the notices in this case appear to have been posted by other persons, his certificate is extra official and therefore not entitled to be received in evidence. But this conclusion by no means follows. He does not certify that the notices which he caused to be posted were the same notices referred to in the affidavits, but so far as appears from said documents, they may be other and different notices. The fact that the clerk, under the sanction of his official responsibility, has filed his certificate of the posting of five notices in five public places of said township, is, to say the least, some evidence independent of the affidavits, that said notices were posted as he states.

It is further insisted that the evidence fails to show that any adjourned meeting was held by the commissioners, in their proceedings to enlarge the boundaries of said drainage district, as provided by section 52 of the Drainage Act. It is sufficient to say, that section 52 relates exclusiveiy to proceedings for the original organization of special drainage districts, and that we know of no reason or rule of construction by which they can be held to apply to proceedings for the enlargement of such district. In *Drainage Commissioners* v. *Griffin,* *supra,* we held that, inasmuch as in section 42, under which annexation proceedings are authorized to be taken, no provision is made for notice to the land-owners whose land is sought to be annexed to an existing district, we would so construe that section as to apply to it the provisions of section 50 in relation to notice. This construction was arrived at upon the principle that natural justice required that some reasonable notice should be given to such land-owners, and as the Legislature had made no provision for notice in the section authorizing annexation proceedings, we would presume it to be the legislative intention that the provisions as to notice in the case of the original organization of a district should be held to apply to annexation proceedings. It does not follow, however, that all the provisions relating to the original organization of a drainage district should be construed to apply to those proceedings. No such reason or necessity exists in relation to those portions of section 52 which provide for an adjourned meeting for the purpose of perfecting the original organization of a district, and we can see no ground therefore for holding that those provisions have any application to proceedings taken under section 42.

It is further objected that the lands sought to be annexed to said district are not within the same system of drainage, and that the action of the commissioners in attempting to make said annexation was therefore unauthorized by law. Section 42 of the Drainage Act provides that drainage com-

missioners may, at any time, enlarge the boundaries of their district by attaching new areas of land which are involved in the same system of drainage and require for outlets the drains of the district made or proposed to be made. Whether the lands sought to be annexed to a district are of the character and description here indicated is a judicial question which the commissioners must, from the necessity of the case, determine in the first instance, as preliminary to making the annexation, and we are inclined to the opinion that, at least in the absence of fraud, their decision, when made, is so far final as not to be the subject of inquiry and review in *quo warranto* proceedings. But whether this is so or not, the evidence in this case, though conflicting, is sufficient to sustain the finding that the lands annexed are in fact within the system of drainage, and require for outlet the drains of the district.

The point is also made that several of the owners of land in the areas sought to be annexed to said district were minors, and that no guardians *ad litem* were appointed for them, and that they were not represented by their guardians in the annexation proceedings. The statute makes no provision for the appointment of guardians *ad litem* in proceedings of this character, and gives the commissioners no authority to appoint such guardians. In proceedings for the original organization of special drainage districts, which must be had before the County Court, provision is made for the appointment of guardians *ad litem* for infant land-owners, but those provisions do not extend to proceedings for the annexation of new areas to districts already formed. The jurisdiction of the commissioners over the lands of infants in those proceedings is acquired by giving notice in the mode prescribed by the statute, and while infants thus notified may doubtless appear by their guardians and contest the proceedings, their appearance in that mode is not made necessary to the regularity or legality of the order for the enlargement of the boundaries of the district.

It is said that the annexation proceedings were unauthorized and void because the commissioners were an interested tribunal, and therefore disqualified to act. We are unable to see from the evidence that they had any legal interest in the result in any other way than as residents and land-owners in the district. There is some evidence tending to show that one of the commissioners signed the names of several of the petitioners to the petition, but the evidence also shows that he did so at the request of the persons whose names were thus signed. It is also alleged, though with little if any foundation in the evidence, that one or more of the commissioners interested themselves actively in the circulation of the petition for signatures, and it may perhaps be inferred from all the evidence that one or more of the commissioners were personally in favor of the proposed annexation. It is not the rule however, so far as we are aware, that interest as a land-owner or tax-payer in a municipal or quasi municipal corporation disqualifies a person for holding an office in such municipality, or for performing any duty incident to such office, although his own personal or pecuniary interest may to some extent be affected by his action. And this must be especially true in case of drainage districts which are organized for the promotion of the private interests of the land-owners within such districts. Nor are we aware that preconceived opinions or preferences of persons elected to such offices have ever been held to be a legal disqualification. On the contrary, municipal as well as other executive and ministerial officers are not unfrequently elected because of their avowed opinions or preferences in relation to public measures which are likely to come before them for their official action. And the question is not materially affected by the fact that the ministerial or executive duties which he may be called upon to perform may involve more or less of quasi judicial action, or of discretion akin to what may properly be called judicial. Doubtless such officer may, as a matter of prudence or delicacy, decline to act in a matter in which he

feels a personal interest, where his official duty may be as well performed by another, but if he chooses to perform the duty himself, it can not be said that he acts without jurisdiction, or that his act is *ultra vires* and therefore void, so as to be capable of being reviewed and set aside even by a direct proceeding by *quo warranto*. In this case the commissioners and they alone were authorized to entertain and grant or refuse the petition for annexation, and the duty to act in the premises was one which the statute imposed upon them, and which they could not commit to other hands. They had therefore no discretion, but were bound to act, and we perceive no reason for holding their action invalid by reason of any disqualification on their part.

We think there was no error in admitting in evidence the petition for the organization of said district or the petition for the enlargement of its boundaries. The objection to their admission was based upon an alleged failure on the part of the defendants to prove the genuineness of certain of the signatures appearing thereon. At the commencement of the trial it was stipulated by the respective parties in writing, that the defendants should not be required, in the first instance, to prove the signatures appearing as petitioners on the original petition, except those of six signers particularly specified, and also that they should not, in the first instance, be required to introduce evidence as to any of the signatures of any of the alleged signers of said petition for annexation, except as to eleven particularly designated. Evidence as to the genuineness of a part of the signatures thus excepted was given, but as to the residue no evidence was offered. Admitting that the burden was on the defendants to prove said signatures in the first instance, the effect of the stipulation was to relieve them of that burden as to all the signatures not particularly excepted. Said papers were therefore properly admitted in evidence as showing petitions signed by all the petitioners whose signatures were thus admitted, and also by those petitioners

32—139 ILL.

whose signatures were proved.  As we understand the record,. the petitioners whose signatures were thus established constituted the portion of the adult land-owners in the district which the statute requires to constitute a valid petition either for the organization of a drainage district or for the enlargement of its boundaries.  That being the case, the failure of the defendants to prove the signatures of the other petitioners. was immaterial.

Another objection sought to be interposed to the validity of said annexation proceedings is, that the areas of land annexed embrace all of the territory included in the village of Easton. It is assumed that Easton is an incorporated village, having conferred upon it by law the exclusive authority to provide for drainage within its own limits, and consequently, that the Drainage Act does not apply to it, and that so far as said village is attempted to be brought into said drainage district, and subjected to the jurisdiction and control of said drainage commissioners, it is nugatory and void.

It should be observed in the first place that no question as to the existence of said incorporated village is raised or in any manner sought to be taken advantage of by the pleadings. Its existence is not alleged either in the information or in any of the subsequent pleadings on the part of the prosecution, nor is it in any manner relied upon as a ground for ousting the defendants, either in whole or in part, from the office or franchise which they are charged with usurping.  Admitting all that is now claimed, the existence of said incorporated village could only result in ousting the defendants from their office and franchise so far as it relates to so much of the district as is included in said village, leaving the district in other respects. unaffected.  But as the prosecution have not adapted their pleadings to that measure or species of relief, it can not be granted.

. Nor have we been able to discover any evidence in the record that Easton is in fact an incorporated village.  We find on

one of the plats in evidence a tract containing eighty acres of land marked off and designated "Easton," but whether it is an incorporated village or not does not appear. Counsel have pointed us to no evidence from which such incorporation may be inferred, and in view of the state of the pleadings, we have not regarded the question of sufficient importance to warrant the labor which would be involved in exploring the very voluminous record for ourselves to find out whether such evidence is contained in it or not.

A number of other points are raised which we do not deem it necessary to discuss at length. We have duly considered them, however, and need only say that we find them without merit. We are of the opinion that there is no substantial error in the record, and the judgment of the Circuit Court will therefore be affirmed.                    *Judgment affirmed.*