JOHN MURR et al.

v.

THE CITY OF NAPERVILLE.

210    371
o214  ²382

*Opinion filed June 23, 1904.*

1. SPECIAL ASSESSMENTS—*assessment should be spread by a disinterested party.* Owners of property specially assessed for a local improvement have a right to have the assessment spread by a commissioner having no peçuniary interest in the result of the assessment.

2. SAME—*when commissioner is disqualified by reason of interest.* A person employed by a city to design a system of water-works, make surveys, plats, drawings, specifications and all "estimates," receiving as compensation a percentage of the cost of the contract work, is disqualified, by reason of interest, from acting as commissioner to spread a special assessment for the improvement.

3. EVIDENCE—*what competent on question of special assessment commissioner's interest.* Property owners objecting to a special assessment have the right to show that the commissioner appointed to spread the assessment also made the estimate of the cost of the improvement, as bearing upon the question of his interest in the assessment.

APPEAL from the County Court of DuPage county; the Hon. L. C. RUTH, Judge, presiding.

This is a proceeding in the county court of DuPage county for the confirmation of a special assessment of the city of Naperville for the construction of a connected system of cast-iron water pipes, with hydrants and valves, in the streets, alleys and avenues of said city. The petition to the county court for the levy of the special assessment for said improvement was filed on September 3, 1903, and set forth an ordinance of the city council of Naperville, passed on July 31, 1903, for the construction of said improvement. Attached to said ordinance were a recommendation by the board of local improvements of said city, dated July 29, 1903, and an estimate of the cost of the proposed improvement of the same date by the president of said board. On September 12, 1903, one

W. S. Shields, who appears to have been appointed prior to that date as a commissioner to spread said assessment, was re-appointed, as such commissioner to spread said assessment and prepare and file the assessment roll, by Alvin Scott, Jr., president of the board of local improvements of said city; and on September 15, 1903, said commissioner filed the assessment roll in the county court. The assessment was spread on the real estate of appellants, and other property owners, by said Shields for the sum of $58,600.00, and returned by him in an assessment roll for that amount to said county court; and objections were filed by appellants, and other property owners, to the confirmation of the said assessment upon their respective pieces of property. All said objections were overruled by the court, and judgment was entered, confirming the assessment, to which the objectors then and there excepted. The objectors waived further controversy as to the question of benefits before a jury, and prayed an appeal to this court. The present appeal is prosecuted on the part of appellants, who are a part of the property owners filing objections to said assessment.

CHARLES WHEATON, for appellants.

H. H. GOODRICH, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Among the objections, made by the appellants in the trial court to the confirmation of the assessment, was the objection that W. S. Shields, who made the assessment, was not a proper and competent person to act as commissioner by reason of the fact that he was pecuniarily interested in making the estimate of the cost of the improvement, and the special assessment thereof.

Section 38 of the act of June 14, 1897, "concerning local improvements," provides as follows: "Upon the fil-

ing of such petition, the superintendent of special assessments, in cities where such officer is provided for by this act, otherwise some competent person, appointed by the president of the board of local improvements, shall make a true and impartial assessment of the cost of the said improvement upon the petitioning municipality, and the property benefited by such improvement." (4 Starr & Cur. Ann. Stat.—Jones & Addington's Sup.—p. 173). The record shows conclusively that W. S. Shields was appointed by Alvin Scott, Jr., the president of the board of local improvements of the city of Naperville, commissioner to spread said special assessment, although the exact date of his original appointment is not clearly shown. The assessment roll was prepared and filed by the said Shields, so appointed as commissioner for that purpose.

In *Hunt* v. *City of Chicago*, 60 Ill. 183, where two members of the board of public works, one of whom owned property affected, made the assessment for widening a street, it was held that the latter was disqualified to act by reason of his interest, and that the assessment and the ordinance based upon it were void. It was also held in that case as follows: "Where public officers are clothed with important powers, subject to but few effectual restraints, so that the rights of private property are almost at their mercy, it must be held that the acts of such officers must be free from the motives of special pecuniary interest, and courts should open the way to a proper investigation of the sources of such improper motives; to do otherwise would be to encourage a prostitution of their powers to their own private ends, by a judicial shield, which should be applied to the protection of the oppressed. In such a case, it is error for the court, on an application for a judgment for the assessment, to refuse to permit the defendant to show that one of the two commissioners making the assessment had a pecuniary interest in making it."

In *Shreve* v. *Town of Cicero*, 129 Ill. 226, we said (p. 229): "The statute required the court to appoint three competent persons as commissioners to make the assessment, and we think it is plain that a person, who owned property to be assessed, would not be a competent person. Such a person would be interested, and his interest would disqualify him from acting in making the assessment."

In *Chase* v. *City of Evanston*, 172 Ill. 403, where it appeared that one Williams was, at the time of his appointment as commissioner and at the time of the filing of the assessment roll, superintendent of special assessments and the city collector of the city of Evanston; that it was his duty, as superintendent of special assessments, to spread special assessments when appointed by the court, and for such service he was to receive one per cent of the amount of money which he might spread; and that, as city collector, it was his duty to collect special assessments, and for his services as collector he was to receive as his compensation an additional two per cent upon the amount collected, we said: "The statute requires the court to appoint three competent persons as commissioners. These commissioners are also required to take an oath that they will a true and impartial assessment make of the cost of the improvement upon the city or village, and upon the property benefited by such improvement. Here, the pay or compensation of the commissioner, Williams, depended upon the amount of the assessment levied upon private property. The larger the assessment the more compensation he would receive. He had, therefore, a direct interest in increasing the benefits to private property, so as to increase his compensation. If he found that private property was benefited to the full amount required to be raised, $28,894.50, he would receive one per cent on that amount; if only benefited half that sum his commission would be decreased one-half. Under such circumstances was he a competent commissioner? Could he act fairly and impartially between

the city and the property owner? Clearly, he could not. His interest and his duty were in direct conflict, and he was not such a commissioner as was contemplated by the law. As suggested in the argument, an unscrupulous commissioner might be prompted to over-assess private property or to assess property which had not been bene-fited at all." And after referring to the cases of *Shreve* v. *Town of Cicero*, and *Hunt* v. *City of Chicago, supra,* it was further there said: "If a person owning property to be assessed could not act as commissioner because he was interested, upon the same principle a person, who had a direct interest in increasing the assessment, as was the case with Williams, ought not to be permitted to act as a commissioner."

If the facts in the case at bar show that Shields, the commissioner, appointed by the board of local improve-ments of the city of Naperville to spread the assessment here in question, was so interested as to come within the meaning of the doctrine announced in the cases above quoted, then the objection, made by the appellants to the confirmation of the assessment upon that ground, should have been sustained.

On July 3, 1903, a written contract was entered into between William S. Shields, described as "a civil and sanitary engineer, with office in Marquette building, Chi-cago, Illinois," party of the first part, and the city of Naperville, DuPage county, Illinois, party of the second part, wherein Shields, in consideration of the payments to be made to him by the city, agreed to furnish all nec-essary materials, labor, engineering assistance, and to design a water-works system for said city and act as en-gineer for the city in all matters pertaining to the con-struction of said water-works; wherein, also, he agreed to "make all surveys, plats, maps, drawings, reports, es-timates, specifications, prepare and furnish, as directed by the attorney representing said city, all ordinances, and other papers usually required of engineers in con-

nection with the passage of ordinances, the spreading of assessments and confirmation of such assessments in the county court;" wherein, also, he agreed to attend meetings of the city council where contracts were to be let, and where his services might be required; also to furnish a map of water pipe system similar in all respects to the one then on file in the office of the city clerk, except as to such changes as are necessary to conform to a change of location of the pumping station and water supply, and changes of or extension of water mains, occasioned by the growth of the city or desired by said city council; also to furnish another map, showing all property to be affected by or assessed for the construction of the contemplated water pipe system; also to furnish the necessary blanks, and act as commissioner, or assist a commissioner, appointed by the proper authorities, in spreading the special assessment for all such work as might be required to be done in that manner; also to attend the hearing of objections in the county court, if such attendance were required by the attorney in charge; also to furnish all necessary plans and specifications for the construction of all parts of the proposed water works, with blank forms for bidders, and contracts after the work has been awarded by the city; also to furnish a sufficient number of experienced engineers and inspectors to oversee the work under construction, inspect all materials and issue all estimates to the contractors; to report from time to time to the city council upon the progress of the work, and receive such instructions as they may issue regarding the work, and have the same carried out by the contractors, etc. And the city of Naperville in said contract agreed, in consideration of said agreements by Shields, to pay to him "when all contracts for the construction of said work shall be wholly carried out and completed, and the said work accepted by the city of Naperville, a sum equal to five per cent of the total cost or amount of all contract work, less the sum

of $250.00 allowed for maps furnished by the said city and used by the said first party in designing the said water-works system;" partial payments of the above amount to be made by the city to said engineer as follows: upon the completion of the plans and specifications for the construction of the pumping station, machinery, tower and reservoir, and the awarding of contracts therefor, the sum of $250.00; upon the completion of the design of the water pipe system with map and specifications for the construction, and the preparation of ordinances and special assessment rolls therefor, and when the said special assessment rolls shall have been filed in the county court, an additional sum of $250.00; "then such monthly estimates shall be allowed during the construction of the work as may be approved by the board of local improvements, and the final payment upon the completion of the work as herein specified;" the city to prosecute the work to completion as herein intended, and, in case of its failure so to do, a reasonable allowance shall be paid to the said first party, Shields, for actual services rendered.

By the terms of this contract Shields, who was a civil and sanitary engineer, was not only to make all surveys, plats, maps, drawings, reports and specifications, but also all "estimates." Upon the trial the objectors offered to prove that Shields, who made the assessment, also made the estimate of the cost of the improvement, but the court refused to allow the objectors to introduce such proof. We think that the court erred in this regard, as such proof was competent for the purpose of showing the interest of Shields while acting as commissioner. (*Hunt* v. *City of Chicago, supra.*) But, independently of this, the contract upon its face shows that Shields had such an interest, as should have disqualified him from being appointed to act as commissioner. He was, by the terms of the contract and in accordance with the provisions of the ordinance of the city, to design and construct

for the city a water-works system of cast-iron water pipes, hydrants and valves in the streets, alleys and avenues of the city, and, by his appointment as commissioner, he was to spread the very assessment, which was to be levied upon the property owners for the purpose of paying him for the designing and construction of such system of water-works. The cost of such system would necessarily depend upon the plans and specifications prepared by himself, and upon the materials, labor and engineering assistance furnished by himself. He was to have as his compensation a sum equal to five per cent of the total cost of all the contract work, less a certain sum allowed for maps furnished by the city, etc.

Clearly, Shields, the commissioner, was interested in spreading the assessment, and in the confirmation of the same by the court. It is to be noted that the contract, which was executed between him and the city, was executed on July 3, 1903, prior to the passage of the ordinance for the improvement by the city council on July 31, 1903, and prior to the presentation and recommendation of the ordinance to the city council by the board of local improvements on July 29, 1903, and prior to the date of the estimate of the cost of the improvement, which was July 29, 1903. It also appears that he was re-appointed commissioner to spread the assessment on September 12, 1903, and the order, re-appointing him at the latter date, clearly shows that he was originally appointed commissioner before the filing of the petition in court for the confirmation of the assessment. His appointment appears to have been in pursuance of the contract made by him with the city on July 3, 1903, and not the result of the exercise of an independent judgment as to his competency and fitness by the president of the board of local improvements.

He was required by the contract to estimate the cost of the improvement in question, and it is clear that the higher he made the estimate of cost, the higher would

be the contract bids for the work. The bids of the contractors would necessarily center around the standard of the estimate of cost created by him. The cost was estimated at $58,600.00, and the bids would necessarily be about that amount. The higher the bids the more the commissioner would get in percentage, and the higher the estimate of costs the higher would be the bids. We are unable to reach any other conclusion than that this commissioner was interested in making the estimate as high as possible, and in spreading the assessment accordingly to meet the bids of the contractors for the work in proportion to such estimate. He was not a totally disinterested person. As was said in the cases above referred to, private property owners, if they are to be assessed for a public improvement, have the right to have such assessment made by an absolutely impartial commissioner, and one who has no pecuniary interest, either direct or indirect, in the result of the assessment.

For the reasons above stated, we are of the opinion that the county court erred in not sustaining the objection made by the appellants to the confirmation of the assessment, upon the ground that the commissioner appointed to spread the same had a pecuniary interest, which disqualified him from acting. Many other objections were made to the confirmation of the assessment, and are earnestly insisted upon and elaborately argued in the briefs of counsel; but we deem it unnecessary to consider them, as the judgment must be reversed for the failure of the court to sustain the objection above indicated.

Accordingly, the judgment of the county court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.                    *Reversed and remanded.*