THOMAS BETTS *et al.*

*v.*

THE CITY OF NAPERVILLE.

*Opinion filed February 21, 1905—Rehearing denied April 5, 1905.*

1. SPECIAL ASSESSMENTS—*when a party is not disqualified to spread assessment.* A person employed by a city to design a system of water-works, furnish materials and labor, act as engineer in the construction of the system, make surveys, plat, estimates and specifications, receiving as compensation a per cent of the total cost or amount of all contract work, is not disqualified, by reason of interest, to act as commissioner in spreading the assessment. (*Murr v. City of Naperville,* 210 Ill. 371, overruled.)

2. SAME—*evidence as to who made estimate of cost is not admissible.* On petition to confirm a special assessment, where the estimate of cost is signed by the president of the improvement board, as required by law, it is not competent for objectors to attempt to show that the estimate was made or the data therefor furnished by another person than the president of the board.

3. SAME—*absence of proof of legal existence of board of local improvements is no objection.* On petition to confirm a special assessment, where the recommendation submitting the ordinance and estimate is signed by three persons as the board of local improvements, the question of the legal existence of the board cannot be raised, the remedy to test such existence being by *quo warranto.*

4. SAME—*when proof that notice of hearing was not in legal form is properly excluded.* Proof that the notice of public hearing was not in compliance with the statute is properly denied admission when offered after the case had been closed.

5. SAME—*what not ground for revising assessment.* A special assessment should not be modified or re-cast merely because there is a difference of opinion as to whether the commissioner exercised sound judgment in spreading it, unless his action was so improper as to amount to fraud.

6. SAME—*the cost of maintaining improvement board cannot be raised by assessment.* The proviso to section 94 of Local Improvement act, as amended in 1901, (Laws of 1901, p. 117,) providing that in cities of less than 100,000 inhabitants a sum not exceeding six per cent of the amount of the assessment may be, by ordinance, applied "toward the payment of the aforesaid costs and other costs of making and collecting the assessment," does not authorize the inclusion of the cost of maintaining a board of local improvements, or any expense except the cost of making and collecting the particular assessment.

7. SAME—*effect where ordinance provides for illegal costs.* If a provision of a special assessment ordinance fixes a certain amount to be raised for costs, some of the purposes being illegal and inseparable from the legal ones, the provision should be eliminated and the assessment reduced by the amount specified therein.

MAGRUDER, J., dissenting.

WRIT OF ERROR to the County Court of DuPage county; the Hon. L. C. RUTH, Judge, presiding.

CHARLES WHEATON, for plaintiffs in error.

GEORGE W. BROWN, and H. H. GOODRICH, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The city of Naperville, defendant in error, filed in the county court of DuPage county a petition for a special assessment to pay the cost of constructing a connected system of cast-iron water pipes, with hydrants and valves, in the streets of said city. Plaintiffs in error, owners of property assessed, filed objections to the ordinance and assessment, to be heard by the court, and when those objections were overruled they waived further controversy as to the question of benefits before a jury and the assessment was confirmed. The writ of error in this case was sued out to review the proceeding.

It is said the ordinance does not connect the pipe system with the water-supply works, but that is a misapprehension,

The objection chiefly relied upon is, that William S. Shields, the commissioner who spread the assessment, was not competent to act in that capacity, for the reason that he was pecuniarily interested in the assessment. The objectors introduced in evidence a contract between the petitioner and Shields, by which he agreed to furnish all necessary materials, labor and engineering assistance and to design a water-works system for the city; to act as engineer in all matters pertaining to the construction of said water-works; to make all surveys, plats, maps, drawings, reports, estimates and specifications; to prepare and furnish ordinances and other papers usually required of engineers in connection with the passage of ordinances and the spreading and confirmation of assessments; to furnish a map showing property affected, and furnish blanks, and act as commissioner or assist a commissioner in spreading assessments; to furnish plans and specifications, with blank forms for bidders, advertisements and contracts, and to provide experienced engineers and inspectors to oversee the work. The petitioner agreed, as compensation, to pay him, when all contracts for the construction of the water-works should be wholly carried out and completed and the work be adopted by petitioner, a sum equal to five per cent of the total cost or amount of all contract work, less $250 for maps furnished by the city. Partial payments of $250 each were to be made, the first on the completion of the plans and specifications for the pumping station, machinery, tower and reservoir and awarding contracts therefor, and another upon the completion of the design for the water pipe system, with map and specifications, the preparation of ordinances and special assessment rolls, and when the assessment rolls should be filed in the county court. Afterward monthly estimates were to be allowed during the construction of the work and final payment upon completion of the work.

This contract is the same one which was set out, in substance, in the case of *Murr* v. *City of Naperville,* 210 Ill. 371,

relating to the same assessment. In that case it was considered that Shields was disqualified, by interest, to act as commissioner in spreading the assessment, for the reason that the higher he made the estimate of cost the higher would be the contract bids for the work, because the bids would necessarily be about the amount of the estimate. While that decision is conclusive as to the property then involved, we are satisfied that the conclusion was incorrect. The assessment was to be based upon the estimated cost of the improvement. Nothing that a commissioner could do in spreading the assessment could in any manner increase that estimate, and therefore, in determining that Shields was interested pecuniarily, it must first be assumed that he made the estimate of cost which was the measure of the assessment. That could not be so, because under sections 7 and 10 of the Local Improvement act the assessment was required to be made by the president of the board of local improvements, over his signature. (Laws of 1897, pp. 104, 105.) The estimate was made by Alvin Scott, Jr., mayor and president of the board of local improvements, and over his signature. It was the act of the president of the board of local improvements, presented to and adopted by that board and by the city council, whoever may have furnished the data for it. But if the estimate had been made by Shields, he was not to be compensated from the assessment or on the basis of either the estimate or the assessment. By the contract he was to be paid from the general funds of the city five per cent of the actual cost of the construction of the works, and any estimate he might make of the cost of construction would not affect the actual cost. He was to design a system of water-works for the city, a part of which was the pumping station, tower and reservoir, not included in the assessment, and the other part was a system of water pipes; for which the assessment was levied. It is true that the interest of Shields would be to design and present to the board of local improvements an expensive system, for the reason that the more complete,

thorough and better the system the greater the cost of construction would be and the greater his compensation. He could, perhaps, have some influence with the board of local improvements or the city council with respect to the character of the work or the system to be adopted, but all that he could say or do would be merely advisory, and the system must meet the approval of the board and council. It certainly cannot be said that he was not competent to act as commissioner in spreading the assessment for the reason that the board of local improvements and council might perhaps have adopted, at his suggestion, a better and more expensive system of water-works than they otherwise would. When the plan had been adopted with the estimate of the cost by the board of local improvements, there was nothing that a commissioner spreading the assessment could do to change or affect it. Shields had nothing to do with the letting of contracts or the cost of construction. Such contracts must be let by the board of local improvements to the lowest bidder, after advertising as provided by statute. By section 78 of the Local Improvement act any owner or person interested in any property assessed is entitled to a hearing before the board on any question connected with the award of the contract. By section 79 notice of the award of the contract is to be posted for five days, and by section 80 owners of a majority of the frontage may elect to take the contract. (Laws of 1897, p. 129.) Particular provisions are made to protect the property owner against paying more than ought to be paid for the improvement, and we think it cannot be said that the bids will be about the amount of the estimate. It would seem more reasonable to say that estimates are ordinarily based upon knowledge and experience as to the amount for which bidders are willing to do the work. By section 84 of the Local Improvement act, as amended in 1903, after the final completion and acceptance of the work, if the special assessment exceeds the cost of the work, with interest, the excess is to be abated and the assessment reduced proportion-

ately and credited on the respective assessments. (Laws of 1903, p. 105.) The property owners are not required to pay more than the actual cost of the work, and that could not be affected or influenced by anything Shields could do, as commissioner or otherwise. He therefore had no pecuniary interest disqualifying him as commissioner.

The objectors called William S. Shields and Alvin Scott, Jr., and asked each of them who made the estimate that was signed by Scott, as president of the board. Objections were sustained by the court. The estimate was made and signed as required by law, and the effort was to show that Shields, in fact, furnished the data or made it out, although it was signed by the president of the board. If Scott should be considered a competent witness to impeach his own official act, there was still no error in the ruling as to either witness, because the cost of the system depended on the plans and specifications and the cost of actual labor and materials, and not on the estimate.

Another objection is, that there was no evidence of the creation or legal existence of the board of local improvements. There were all the customary proceedings before persons acting as such a board. There was a recommendation, submitting an ordinance and estimate, signed by three persons as the board of local improvements, and the estimate was signed by one of them as president of the board. No question of the legality of the organization of that board or its existence could be raised in this proceeding. That must be done by *quo warranto,* and the objection is groundless.

It is urged that notice of the public hearing by the board of local improvements was not in compliance with the statute. The objectors offered to make proof of that notice after the case had been closed, and the court was not bound to hear it, so that there was no error in excluding the proof. We may say, however, that the objection to the notice was not good. The cases relied upon relate to the estimate to be made a part of the record of the resolution. Only the sub-

214—25

stance of the estimate is to be given in the notice. *Lanphere v. City of Chicago,* 212 Ill. 440.

The objectors examined witnesses who pointed out what they deemed inequalities and unfairness in the assessment between different pieces of property. It is contended that the court erred in not setting aside the assessment or revising and correcting it. The objectors waived all controversy as to benefits, which covers the questions whether their property was benefited to the amount assessed thereon and whether such property was assessed more than its proportionate share of the cost of the improvement, and we think there was no evidence before the court on the hearing of the legal objections which required the court to set aside or annul the assessment or to refer it back for revision or correction. An assessment will not be modified, altered, annulled or re-cast merely because there is a difference of opinion as to whether the commissioner exercised sound judgment in spreading it, unless his action was so improper as to amount to fraud. *Allen* v. *City of Chicago,* 176 Ill. 113.

The estimate of cost, after giving the items of the improvement, contains an estimate of $3378 for engineering, superintending, levying and collecting the assessment. Section 3 of the ordinance provides for the raising by special assessment of $3278, to be applied toward "the cost and expense of maintaining the board of local improvements, the entire cost and expense attending the making and return of the assessment rolls, and necessary estimates, examinations, advertisements, etc., and all other expense connected with the proceedings for levying, making, spreading and collecting the special assessment herein provided for and of letting and executing all contracts for the making of said improvement." It is objected that there is a variance between the estimate and ordinance, and that the city provided for the cost and expenses of maintaining the board of local improvements, which was not included in the estimate. Section 94 of the Local Improvement act, as amended in 1901, provides that

all the costs and expenses mentioned in this ordinance shall be paid by the city, village or town out of its general fund, provided that in cities, towns and villages having less than 100,000 inhabitants the city, village or town may, by the ordinance providing for the assessment, provide that a certain sum, not to exceed six per cent of the amount of the assessment, "shall be applied toward the payment of the aforesaid and other costs of making and collecting such assessment." (Laws of 1901, p. 117.) Clearly, this proviso does not authorize the levy of a special assessment to pay the costs and expenses of maintaining a board of local improvements or paying their salaries, or any expense except the cost of making and collecting the particular assessment. If it did it would be beyond the power of the legislature, since private property cannot be specially assessed except for a local improvement, and only to the extent of benefits therefrom. All that can be assessed is the cost of making and collecting the particular assessment, and property cannot be charged with the maintenance of a board of local improvements for the hearing of questions relating to other improvements not benefiting the property assessed. The compensation of Shields, under his contract, was to be paid by the city from its general fund, and at any rate the provision of the ordinance embraced illegal expenses which cannot be separated from the actual cost of this assessment. The specific amount to be included in the assessment as costs being fixed by the ordinance, the other provisions are not affected by its illegality and the assessment will not be affected by eliminating it.

The judgment is reversed and the cause is remanded to the county court, with directions to reduce the assessment against the property of the plaintiffs in error by eliminating therefrom their proportionate shares of the item included for costs and expenses.

*Reversed and remanded, with directions.*

Mr. JUSTICE MAGRUDER: I do not concur.