HENRY H. GAGE *et al.*

*v.*

THE VILLAGE OF WILMETTE.

*Opinion filed October 23, 1907—Rehearing denied Dec. 5, 1907.*

1. SPECIAL ASSESSMENTS—*when labor and materials need not be estimated separately.* Where the cost of the various parts of a sewer improvement is estimated in separate items, thereby showing the estimated cost of substantially all of the component parts of the improvement, it is not necessary to estimate the labor and materials in a separate item.

2. SAME—*what item of cost is not unlawful.* Where a local improvement is proposed to be constructed by a village by special assessment, an item in the estimate of cost covering lawful expenses attending the proceedings for making the improvement and the cost of making and collecting the assessment is not unlawful. (*Gault* v. *Village of Glen Ellyn,* 226 Ill. 520, followed.)

3. SAME—*ordinance must be viewed as a whole.* An ordinance must be considered as a whole in order to ascertain is true meaning, and if it is capable of two constructions, one of which will support and the other defeat the ordinance, the courts will adopt that construction which supports the ordinance.

4. SAME—*when limits of a drainage district are not uncertain.* The limits of a drainage district to be included in a sewer improvement will not be held to be uncertain, even though there is some ambiguity in the description of such limits set out in the ordinance, where it is apparent, from the whole ordinance, what territory was intended to be included as comprising the district.

5. SAME—*effect where territory of a village has been added to sanitary district.* The mere facts that the territory of a village has been added, by act of the legislature, to the territory of the Sanitary District of Chicago and that the sanitary district trustees have passed an ordinance locating the proposed route of its main channel through the village, does not deprive the village of the power to make sewer improvements by special assessment.

6. SAME—*what does not render sewer ordinance unreasonable.* The fact that a relief sewer constructed by a village located on the shore of Lake Michigan will drain into the lake and carry surface water, and incidentally some sewage, into the lake, which has always been the drainage outlet for the village, does not render the ordinance unreasonable, as being contrary to the spirit of the Sanitary District act.

7. SAME—*item for lawful expenses does not apply to expense of maintaining improvement board.* An item in the engineer's estimate for lawful expenses attending the proceeding for making the improvement and the cost of making and collecting the assessment does not authorize the use of such money for the regular expenses or salaries of the board of local improvements, nor for paying regular employees of the city for work done upon the assessment.

APPEAL from the County Court of Cook county; the Hon. W. L. POND, Judge, presiding.

F. W. BECKER, for appellants.

ROBERT REDFIELD, and A. C. WENBAN, (TOLMAN, REDFIELD & SEXTON, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of confirmation of an assessment in the county court of Cook county, levied to defray the expense of constructing a relief sewer in the village of Wilmette, at an estimated cost of $149,083. The main sewer, with its branches and adjuncts, is planned to intersect the present sewer system of the village for the purpose of carrying off the surface water and relieving the present sewers in times of unusual pressure. Appellee village is located on the west shore of Lake Michigan, immediately adjoining and north of the city of Evanston. The improvement is proposed to be constructed of concrete, except the 550 lineal feet forming the outlet into Lake Michigan, which is to be built of heavy plank.

It is first objected that the estimate of the engineer is not sufficiently and correctly itemized. The heading of the estimate states that it is submitted as "an estimate of the cost of the construction of said improvement, including labor, materials and all other expenses attending the same, and the cost of making and collecting the assessment therefor, as provided by law, namely," then follow some sixteen different items, the last item reading as follows: "For

lawful expenses attending the proceedings for making said improvement, and the cost of making and collecting the assessment therefor, $8400." It is insisted that there should be a separate item for labor, material and other expenses that are not itemized. Substantially this contention has been considered and overruled by this court in *Lanphere* v. *City of Chicago,* 212 Ill. 440, *Hulbert* v. *City of Chicago,* 213 id. 452, *Gage* v. *City of Chicago,* 223 id. 602, and the cases therein cited.

In this same connection it is contended that under the authority of *Betts* v. *City of Naperville,* 214 Ill. 380, the last item quoted above for the lawful expenses attending the proceedings for making said improvement and the cost of making and collecting the assessment therefor is contrary to the statute. On an ordinance practically the same in wording on this point as the one here involved, this court, having under consideration the question discussed in the briefs, in *Gault* v. *Village of Glen Ellyn,* 226 Ill. 520, distinguished the wording of the ordinance there under discussion from the point decided in the *Betts case, supra.* Our conclusion in the *Gault case* must control here.

We are of opinion that substantially all the component elements of the improvement are set forth in the estimate, and that under the authorities heretofore cited it was not necessary to estimate the labor and materials in a separate item. Nothing that was said in *Lyman* v. *Town of Cicero,* 222 Ill. 379, in any way conflicts with this holding. It is not necessary to have all the minute details as to materials that go into the improvement estimated in different items. *Doran* v. *City of Murphysboro,* 225 Ill. 514; *MacChesney* v. *City of Chicago,* 227 id. 215.

It is further contended that the ordinance is uncertain as to the limits of the drainage district. The ordinance provides that the drainage district shall be composed of "all that territory lying within the corporate limits of said village west of the following described line," then giving a

line commencing at the west shore of Lake Michigan, thence running through various crooks and turns, and finally south "to the south limits of said village." It appears that the south limits of the village at that point, on account of a jog, are some two hundred feet north of the south limits further west. From this part of the ordinance alone there might be some doubt as to the southern limits of the drainage district, although we would be inclined to hold that notwithstanding the jog of two hundred feet, the ordinance quite plainly intended, from this wording alone, that all of the territory west of this line (and the line extended two hundred feet southward) within the limits of the village was to be within the drainage district. This, however, is plainly shown to be the meaning by other sections of the ordinance, which provide for branch sewers to be built in portions of the streets in the village which are in this two hundred foot strip in question. This court has frequently held that in order to obtain the true meaning of an ordinance it must be looked at as a whole, and that one section may be considered to explain the meaning of another. (*Gage* v. *City of Chicago,* 196 Ill. 512; *McChesney* v. *City of Chicago,* 173 id. 75.) If we were to judge the limits of the drainage district only from that part of the ordinance quoted above, we think the most that could be contended for by appellant is that the ordinance in this respect was susceptible of two constructions. In such case, if one construction will support and the other defeat the ordinance, that one which will uphold the ordinance must be the one adopted. (*City of Chicago* v. *Wilson,* 195 Ill. 19; *Berry* v. *City of Chicago,* 192 id. 154.) Considering the ordinance as a whole, we do not think there is any uncertainty as to the boundaries of the proposed drainage district.

Appellants also contend that the ordinance is uncertain in that part which refers to the covers for the man-holes and spillway man-holes. It appears from the record that the covers for the man-holes are to be the same as the

covers for the catch-basins as to size and weight, except
that the man-hole covers are to have a plain or tight lid,
while the catch-basin covers are to have a perforated lid,
with holes for the purpose of letting in the water.  In de-
scribing these covers, plans "F" and "G" are referred to.
Plan "F" is a drawing for a perforated lid and plan "G"
for a tight lid.  Plan "G" only shows the lid itself, while
plan "F" shows not only the lid but the top of the catch-
basin.  The ordinance states, "each of said ordinary man-
holes and the spillway man-holes shall be provided and fitted
with a cast-iron cover with tight lid, which cover, with the
lid, shall weigh 470 pounds, and shall be of design as shown
in the detail plans or drawings hereto attached and made a
part hereof, and marked 'Plans 'F' and 'G.' '"  It is admit-
ted that the ordinance itself shows that the man-hole covers
are to be with tight lids, but it is contended that by re-
ferring to both plans "F" and "G" the ordinance is made
uncertain as to whether the man-holes are to be covered
with perforated or tight lids.  From what we have already
said it is quite clear that no one would be misled as to the
covers intended for the man-holes, from the ordinance and
specifications alone.  Two witnesses who were admitted by
appellants to be qualified to testify on this question, stated
positively that anyone familiar with the work would have
no difficulty in understanding the character of the covers to
be placed on the man-holes from this description quoted in
the ordinance and taken in connection with the plans and
specifications; that it was plainly intended by the ordinance
that the tight lid should be used for the man-holes.  From
the record before us there is no foundation for the claim
that there is any uncertainty in the ordinance on this point.

It is further contended that the village of Wilmette has
been added to the Sanitary District of Chicago, and that
thereby the district has acquired power over this territory
and under the law should provide drainage for the same.
The territory of the village of Wilmette was added to the-

sanitary district by a law which went into force July 1, 1903. (Hurd's Stat. 1905, p. 368.) This record shows that since then the only thing that has been done as to the Wilmette territory is the passing of an ordinance by the sanitary district trustees locating the proposed route of the main drainage channel from the north branch of the Chicago river to Lake Michigan, the point where it touches Lake Michigan being practically the same point where the outlet of the sewer here in question is to enter the lake. Not a foot of land for right of way for this channel, as appears from the record, has been obtained, and there is nothing to show that the proposed route may not be changed before the channel is finally dug. Even if that channel is dug on the proposed route, no matter how expeditiously the work is carried on, past experience with this work shows clearly that it may be years before the North Shore channel can be completed so that the village of Wilmette can drain its sewage into it. In adding this territory to the sanitary district the legislature certainly never contemplated that pending the completion of the channel all power should be taken from the village authorities to construct sewers to care for the sewage in that village. Until the main channel of the sanitary district is extended to within the limits of the village of Wilmette, no serious contention can be made that the sanitary district trustees have control over the sewers and drains of the municipality. We express no opinion as to the law on this question when such main channel has been so extended. This conclusion is in harmony with what this court said in *Rich* v. *City of Chicago,* 152 Ill. 18, and *Gage* v. *City of Chicago,* 225 id. 218.

It is further urged that the ordinance is unreasonable because the outlet of the proposed sewer is into Lake Michigan, and that this is contrary to the spirit of the Sanitary District act, heretofore referred to, which had for its object the construction of a system of drainage to prevent the sewage and drainage of the city and its surroundings from

being carried into Lake Michigan, thereby contaminating
the waters of the lake. (*People* v. *Nelson,* 133 Ill. 565.)
The only outlet for the sewage of Wilmette since the vil-
lage was founded has been Lake Michigan. Practically all
the villages along the lake shore drain their sewage into
the lake. The present relief sewer is not proposed to be
constructed for the purpose of carrying sewage, but chiefly
to carry off surface water. This sewer system is so planned
that when the main .drainage channel to the north shore is
finally completed the two can readily be connected and the
sewage thereafter all turned away from Lake Michigan. If
the contention of appellants be upheld on this point, then
the village of Wilmette, and all the other municipalities in
the State along the lake shore, could be restrained from
sewering into the lake. The result of such action might
be an epidemic of disease in all of these towns. Before the
court would be justified in taking this course it would have
to be shown, beyond all doubt, that the public health clearly
demanded such·action. All the presumptions are in favor
of the reasonableness and validity of the ordinance, and the
courts will only declare an ordinance unreasonable and void
when the evidence shows a clear, strong case. No showing
of any kind has been made here beyond the bare fact that
the surface water, and incidentally some sewage, is to be
carried by this sewage system into Lake Michigan. There
is nothing in this record to authorize the court in holding
this ordinance unreasonable. *City of Belleville* v. *Pfingsten,*
225 Ill. 293, and cases there cited.

Finding no reversible error in the record the judgment
of the county court will be affirmed.

*Judgment affirmed.*

Subsequently, on consideration of the petition for rehear-
ing in this cause, the following additional opinion was filed:

Per CURIAM: The appellants insist in the petition for
rehearing, as they did in their original brief, that by the

wording of the estimate the expenses of maintaining the board of local improvements can be paid out of this assessment. Under section 6 of the Local Improvement act (Hurd's Stat. 1905, p. 405,) it is plain that in cities having a population of 100,000 or more regular salaries are to be paid from the general funds of the city to the members of the local board of improvements, and that in all other cities, villages and incorporated towns this board is made up of regular employees of the city or members of the city or village councils. Clearly, they are not to be paid, as members of the local board of improvements, any additional compensation. Under section 94 of the Local Improvement act, (Hurd's Stat. 1905, p. 427,) in cities, towns and villages having a population of less than 100,000 it may be provided by ordinance that a certain sum, not exceeding six per cent of the amount of the assessment, may be applied to the payment of the costs and expenses of the improvement. It would be impracticable, however, to take from the funds of a particular assessment the money to pay, proportionately, the regular salary of any employee of the local board of improvements. The law does not fix any fees for services for the proceedings before the board in making an assessment, and if it were attempted to pay, proportionately, the salary of any city employee from any assessment, such a division would necessarily be arbitrary and would be impossible to carry out without actually charging to one assessment a portion of the costs of other local improvements. This cannot be done. (*Betts* v. *City of Naperville,* 214 Ill. 380.) If, however, a person who is not a regular employee of the city or village should be hired to do special work on a particular improvement, doubtless, under this law, he could be paid for his work from that assessment. For example, if a village does not have a regular engineer employed at a stated salary, such a man might be hired and paid for his special work on the improvement out of the funds raised by that assessment. This is in har-

mony with the views expressed on this subject in *Gault* v. *Village of Glen Ellyn,* 226 Ill. 520. The estimate in this proceeding does not cover any part of the salaries of the board of local improvements or the regular expenses of maintaining said board.       *Rehearing denied.*