GRAND STAHL et al., Appellants, v. BOARD OF SUPERVISORS OF RINGGOLD COUNTY et al., Appellees.

DRAINS: Establishment—Financial Interest of Board of Supervisors. A member of the board of supervisors is disqualified from voting on the question of the establishment of a drainage district when he is directly and tangibly interested in a financial way in such question. It follows that, if his vote be the *deciding* vote, the attempted establishment is a nullity. The contentions urged in avoidance of this holding were:

1. The member, in so voting, acted in an administrative capacity.

2. The act of establishing a drainage district is a legislative act.

3. No statute specifically requires the members of the board to be disinterested.

4. An appeal is allowed from the action of the board.

5. The member, in so voting, acted *ex necessitate*.

*Appeal from Ringgold District Court.*—THOMAS L. MAXWELL, Judge.

JANUARY 12, 1920.

THIS is an appeal from the establishment on part of the defendant board of supervisors of the aforementioned drainage district.—*Reversed.*

*Carr, Carr & Evans* and *Spence, Beard & Hayes,* for appellants.

*Fuller & Fuller* and *Chas. J. Lewis,* for appellees.

SALINGER, J.—I. The board of supervisors of Ringgold County consists of three members. The defendant Vorhies is one member. On the vote upon whether said drainage district should be established, one member of the board other than Vorhies voted "aye," another member "no," and the defendant Vorhies voted "aye." It is manifest, then, that the vote of Vorhies was decisive. The principal com-

plaint of the appellant is that Vorhies was disqualified by interest, and that the court held him qualified so to act.

For the moment, omitting reference to exceptions to the rule, had Mr. Vorhies acted as the judge of a court, in doing any act which would substantially promote his pecuniary interest, he would have been disqualified. It would be sheer affectation to make an extensive citation of authorities for the proposition that one may not be "judge in his own cause." But see *In re Ryers*, 72 N. Y. 1. In *Case v. Hoffman*, 100 Wis. 314 (74 N. W. 220), a Supreme Court decision was held void, because one judge who had tried the cause below, before he became a member of the Supreme Court, cast the deciding vote. Indeed, courts have gone so far as to hold that an act of assembly which authorizes one to judge his own cause would be void, because such an enactment is a denial of due process of law. *Commissioners v. Smith*, 233 Ill. 417 (84 N. E. 376) ; *Day v. Savadge*, Hobart 85; Cooley on Constitutional Limitations (5th Ed.) *page 175; Coke on Littleton, Section 212.

### 1-a

The rule is not challenged, but avoidances are attempted. One of these avoidances is that what Vorhies did was the performance of an administrative, rather than a judicial duty. Many distinctions resting on such difference may be found in the books.

A Wisconsin statute empowers political committees to determine what candidates shall have place on the official ballot. It was held in *State v. Houser*, 122 Wis. 534 (100 N. W. 964, 971), that the members will not be disqualified because they were active partisans and prejudiced. And there is a line of cases which allows ministerial officers to act because the legislature contemplated that those empowered to act would be prejudiced. *State v. Houser*, supra, is one of those, and a leading case. To like effect is *People v. Magee*, 55 App. Div. 195 (66 N. Y. Supp. 849) ; *People v.*

*Cooper,* 139 Ill. 461 (29 N. E. 872, 882) ; *State v. Common Council,* 90 Wis. 612 (64 N. W. 304), and other Wisconsin cases; and perhaps others. In *State v. Common Council,* supra, a prejudiced council was permitted to remove the mayor. But as to this all, there is a conflict in Wisconsin. For it was held, in *State v. Bradish,* 95 Wis. 205 (70 N. W. 172), that a member of a town board who had hired a minor to purchase whisky of a saloon keeper, in violation of law, was incompetent to sit as a member of the town board while trying whether the saloon keeper's license should be revoked for that illegal act. But it must be conceded that there are cases which hold that there may be ministerial acts performed which involve some aspect of judicial or quasi judicial inquiry, and where those who make the inquiry are not in what may fairly be called a judicial frame of mind. On a more careful analysis, it will, however, be found that, after all, these cases turn on the fact that the action of such bodies in so judging deals with office; that the right to hold office is not property; that the officers acting have even a less substantial financial interest involved than has the candidate; that, in truth, no substantial benefit to them depends on how they decide; and, finally, that, since there is no vested right, say, to having one's name placed on a primary ballot as a candidate, and since the legislature was not bound to provide a primary at all, it may, in granting mere privileges, such as this, attach any condition to the use of the privileges, even if it be one condition that certain contests over the right to use the privilege may be decided by ministerial officers who are partisan and prejudiced.

## 1-b

Another avoidance is the urging of decisions which sustain quasi judicial action by commissioners or members of boards on the ground that no statute demands that these members or commissioners shall be disinterested, and other

cases which disqualify officers who are interested, but do so on the ground that the statute demands they shall be disinterested. It is true we have no statute which, in terms, demands that a member of the board of supervisors whose vote really establishes a drainage system shall be disinterested: that is, there is no statute whose letter makes that requirement; but the spirit of all the statutes we have on the subject does make it. There is, first, the general statute policy declared by statute enactments which condemn contracts made by members of town councils or by officers of state institutions if these officers have an interest in such contracts. See Code, 1897, Sections 189, 190, 5713, and Section 668, Subdivision 14. Every person and every body other than the board of supervisors, that act on the establishment of a drainage system, are by statute required to be disinterested. This is true of the body of three appraisers whom the auditor appoints. It is true of the engineer whom the board of supervisors selects, and whom the auditor must appoint as one of the appraisers. Neither the engineer nor the appraisers act finally; their work is, in the end, to be either validated or nullified by the action of the board of supervisors. Can it be possible that a part is greater than the whole; that the mere intermediaries shall be disinterested and the final arbiter need not be? We have said there is no statute expressly so requiring. But the fact that it is required of the intermediaries does not exclude its being demanded of the principal and final actor. All such statute law as this is merely declaratory. 29 Cyc. 1435. The failure to require it of the members of the board looks very much like a case of legislative oversight in not going further with purely declaratory statutes than the statutes enacted do go. But that is not controlling. It was held in *Markley v. Rudy,* 115 Ind. 533 (18 N. E. 50), that, under general principles of jurisprudence, as well as under statute, a county surveyor is incompetent to assess for the re-

pair of a ditch if part of the land benefited and assessed belongs to himself, and a part to his father. Be that all as it may, it is thoroughly well settled that the utmost difference there is between the cases where the statute does demand that the members shall be disinterested and those in which there is no such express demand is that, instead of the action of the board being void, it is but voidable. *Carr v. Duhme*, 167 Ind. 76 (78 N. E. 322), wherein are cited cases from Massachusetts, Michigan, Texas, and California. It is said in the case that, though the statute does not demand that a member be disinterested, "a proper sense of propriety should, in all cases, prevent a member from acting in any proceeding to which he is a party; but if, disregarding such disqualification in a matter over which the board has jurisdiction of the subject and the parties, he does participate in rendering a judgment from which an appeal is allowed, his act and the action of the board will not be void, but only voidable" [citing *Board v. Justice*, 133 Ind. 89 (30 N. E. 1085) ; *Rogers v. Felker*, 77 Ga. 46; *Wilson v. Smith*, (Ky.) 38 S. W. 870; *State v. Ross*, 118 Mo. 23 (23 S. W. 196) ; *Fowler v. Brooks*, 64 N. H. 423 (13 Atl. 417)].

### 1-c

Citations for appellees indicate reliance upon the fact that an appeal lies to the district court. But such appeal does not afford a free review of the merits. Every reasonable presumption is indulged to support the action of the board (see *Temple v. Hamilton*, 134 Iowa 706; *Denny v. Des Moines County*, 143 Iowa 466; *Prichard v. Board of Supervisors*, 150 Iowa 565, at 584; *In re Ryers*, 72 N. Y. 1; *Chicago, M. & St. P. R. Co. v. Monona County*, 144 Iowa 171, 176; *Mittman v. Farmer*, 162 Iowa 364, 382), and it could well happen that the appellate court would be constrained to hold that it could not interfere on the merits. *Denny v. Des Moines County*, 143 Iowa 466, is a case in

which it happened to be the fact that there would have been no system established, and hence no occasion for appellate review of the establishment, had the members of the board not been personally interested. True it is that, where the appeal may be tried to a jury, unembarrassed by the decision appealed from, it has led the courts to hold that the members of the board were not disqualified. See *Stewart v. Mayor*, 7 Md. 500; *Scott v. People*, 120 Ill. 129 (11 N. E. 408); *People v. Cooper*, 139 Ill. 461 (29 N. E. 872).

### 1-d

But these were distinguished in *Vandalia v. Hutchins*, 234 Ill. 31 (84 N. E. 715); and the later Illinois case of *Commissioners v. Smith*, 233 Ill. 417 (84 N. E. 376, at 378), disposed of the right to appeal as an avoidance, by holding that, though there be a right to trial by jury, "still it is entirely clear that, in providing for a commission to determine the amount of money that shall be collected from each property owner, the law of the land forbids the enactment of a statute that permits the selection of a commissioner who personally has a property interest in the result of the deliberations of the body of which he is a member." And it is held in *Bradley v. City*, 99 Ind. 417, that, though appeal lies, a person who is financially interested in the opening of a street, or who is a father-in-law to a person whose property will be affected by such opening, is incompetent to act as a commissioner in the assessment of the benefits and damages.

But if free review *de novo* were an avoidance, such review as is permitted in this jurisdiction does not cure the evil of interested action below. Appeal which is closely restricted, in which the merits are, in effect, not considered, in which it is almost conclusively presumed that the action below was right on the merits (see *Maben v. Olson*, 187 Iowa 1060), surely affords no reason for permitting an interested

party to decide the fact merits to his own tangible, pecuniary advantage.

### 1-e

Upon the fact that review of the action of the board is colored by treating such action as a legislative one is builded the argument that the interest of the members cannot be considered. Public policy demands that even what is, in strictness, legislation shall be free from improper influence. See *Wood v. McCann,* 6 Dana (Ky.) 366; *Richardson v. Scott's Bluff County,* 59 Neb. 400 (81 N. W. 309), and the cases collected in *Dodson v. McCurnin,* 178 Iowa 1211, 1216. Now, while it is true we may not set aside an act of the legislature because it is tainted with improper influences, the public policy which condemns such influence commands that we shall not amplify a mere rule of appellate review, which gives the act of the board the aspect of a legislative act for the purpose of review on the merits, into a rule that we cannot interfere with the establishment of a drainage district on the ground that the board member who cast the deciding vote was unduly influenced. When it comes to that, the action of the board is not beyond our power, as is an act of assembly.

II. Will any or all of these avoidances serve here? Assume that Mr. Vorhies would not be disqualified if his interest were not tangible and pecuniarily substantial; assume that the mere interest of the members of a political committee in the steps that may tend to promote the election of the candidate of their choice will not disqualify them; assume that the interests and prejudices of members of a city council will not disqualify them from acting on a tribunal which considers whether or not a city officer shall be removed from office,—and yet, the case before us is not decided. None or all of these things involve the deciding by a member of the board of supervisors of matters which will take substantial benefits from the mem-

ber if the decision be one way, and will give such benefits
to him if it be the other way.   It is conceded that Vorhies
owned approximately 100 acres of land within the proposed
district.   He testified that, when there were floods, all the
bottom land in his 100 acres would overflow, 100 rods
wide, and that probably 40 acres west and south, and about
the same amount of land on the east, was, at such times,
subject to overflow.   It appears that all of his land in the
district is subject to overflow; so is all his land to the
west; and there is very little to the east that is not.   He
believed that, if saved from overflow, his said land would be
the most productive of any owned by him.   He was very
active in the canvass for the petition.   Before he voted, he
was informed by the engineer what lands would be includ-
ed.   He thought the ditch would double the value of the
lands lying within the district.   He remarked to Hoover
that the establishment was worth $10,000 to him.   He
finally cast the vote that established the district.

2-a

We held, in *Temple v. Hamilton County,* 134 Iowa 706,
that establishment involved the question whether the dis-
trict or a large part thereof will be benefited in some de-
gree; that, while there will be tracts benefited more large-
ly than others, and while some will receive no very per-
ceptible benefit, "all these things are subject to adjustment,
when the board shall come finally to pass upon the classi-
fication of the land and the assessment of the cost of the
improvement upon the property within the district.   All
matters of alleged unequal or improper assessment will
then be considered, and the board is authorized upon such
hearing to increase, diminish, annul, or affirm the appor-
tionment made by the commissioners."   This makes clear
that, in the first instance, the board is given the power to
determine the following questions of fact:   (1) Whether
public utility and general welfare will be benefited by the

establishment; (2) the practicability and feasibility of the plan proposed; (3) whether the benefit to the lands is sufficient to warrant the taxation necessary to pay the costs; (4) how land shall be classified, and so lay the foundation for damages to be paid and for taxation to be raised according to benefits received. Included, of necessity, is the power to fix the limits of the district. Mr. Vorhies cast the deciding vote upon all these questions. He decided against others in disagreement with him that the system should be established. First, he decided who should be appointed engineer, and so, who was to be one member of the body appointed by the auditor to pass upon damages and benefits. Second, he decided that the action of the body of which said engineer was a member should be approved. Without his vote, none of these questions could have been decided. Without his vote, there would be no drainage system established. Without his vote, its boundaries could not have included his lands. His vote, then, under the evidence, made him $10,000 richer than he would have been, had he not cast that vote.

III. So far, we have, in a way, assumed that judges alone were disqualified by interest. At any rate, no great stress has been laid upon how interest might affect acts that are not, in strictness, judicial acts. But an interest less than Mr. Vorhies had, has set aside actions in substance like his. See *Bradley v. City*, 99 Ind. 420; *Appeal of McClure*, 137 Pa. 590 (20 Atl. 711); *Betts v. City of Naperville*, 214 Ill. 380 (73 N. E. 752); *Chase v. City of Evanston*, 172 Ill. 403 (50 N. E. 241); *Shreve v. Town of Cicero*, 129 Ill. 226 (21 N. E. 815).

As to judges, it has been held that a decision was void upon which one who had been of counsel, or tried the cause at *nisi prius*, or was in interest, gave the casting vote. *Case v. Hoffman*, 100 Wis. 314 (74 N. W. 220); *Oakley v. Aspinwall*, 3 N. Y. 547; *Converse v. McArthur*, 17 Barb.

(N. Y.) 410; *Regina v. Justices,* 6 Q. B. (1845) 753; 18
I. B. (1852) 416; *People v. Bork,* 96 N. Y. 188. The same
rule has, however, been applied to acts that are not the act
of a judge. In *Hunt v. City of Chicago,* 60 Ill. 183, the re-
port and application by the commissioners for a new assess-
ment was made by only two commissioners, one of whom
was McArthur; and it was said that, if McArthur was dis-
qualified, by reason of special interest, then the report
should have been regarded as made by one commissioner
alone, and the ordinance based upon it should be held void.

### 3-a

In Illinois, where earlier cases attached importance to
the fact that it was customary (and therefore permissible)
for boards, say, to audit the accounts of the members, we
find the case of *Commissioners v. Smith,* 233 Ill. 417 (84 N.
E. 376). Therein it was held that selecting one who owns
lands within a district to make an assessment of the bene-
fits accruing from the improvement by a drainage ditch,
deprives other property owners of due process of law. It
seems to us this Illinois case and the one before us are iden-
tical, except for the immaterial differentiation that the Il-
linois case deals with the qualifications of a commissioner
appointed to apportion assessments, and that Vorhies act-
ed as a member of a board of supervisors. Indeed, it would
seem that such difference militates against the order before
us; because, while the officer dealt with in the Illinois case
was merely a commissioner to apportion assessments, Vor-
hies cast the deciding vote on finding the essential facts
upon which assessment on part of anyone could be predicat-
ed, and that he, in effect, established the improvement. The
said Illinois decision is approved in the *Vandalia* case, 234
Ill. 31 (84 N. E. 715). And it is said in the *Vandalia* case
that the reasoning of *Chase v. City of Evanston,* 172 Ill. 403
(50 N. E. 241), *Murr v. City of Naperville,* 210 Ill. 371 (71
N. E. 380), *Betts v. City of Naperville,* 214 Ill. 380 (73 N. E.

752), and Cooley on Constitutional Limitations (7th Ed.) 592, 593, and 1 Coke upon Littleton, Butler & Hargraves Notes, Section 212, supports said case. The latest pronouncement in Illinois rules that compensation voted to an officer of a corporation is illegal, if the resolution fixing such compensation is carried by his vote. *Luthy v. Ream*, 270 Ill. 170 (110 N. E. 373, at 375), citing *McNulta v. Corn Belt Bank*, 164 Ill. 427 (45 N. E. 954); *Vorhees v. Mason*, 245 Ill. 256 (91 N. E. 1056). In *Hunt v. City of Chicago*, 60 Ill. 183, it was said, as to an assessor:

"Where public officers are clothed with important powers, subject to but few effectual restraints, so that the rights of private property are almost at their mercy, it must be held that the acts of such officers must be free from the motives of special pecuniary interest, and courts should open the way to a proper investigation of the sources of such improper motives; and to do otherwise would be to encourage a prostitution of their powers to their own private ends, by a judicial shield, which should be applied to the protection of the oppressed."

### 3-b

The constitutional guaranties recognize, as a primal necessity, that there be laws providing impartial tribunals for the adjudication of rights. *Commissioners v. Smith*, 233 Ill. 417 (84 N. E. 376, at 378). The underlying reasoning is self-evident. The cases that voice it will be found collected in *Dodson v. McCurnin*, 178 Iowa 1211, 1216. Roughly speaking, the reasoning is that it is not material that evil results actually follow the influence brought to bear; that, even if such evil did result, it would naturally be concealed; that the courts are concerned, not with what is actually accomplished, but with the tendency of improper influences—are concerned with the natural temptation, and with the fact that, while some might resist, many would not. Nor does it matter the act be not penalized as a crime,

so long as it operates against sound public policy. *Farmers'
Sav. Bank v. Jamieson,* 175 Iowa 676, at 686; *Dodson v. Mc-
Curnin,* 178 Iowa 1211, 1215. In one of the well-considered
of our earlier cases, we set aside a verdict because of so-
cial courtesies shown a juror by a litigant, even though all
united in testifying that the litigation was not mentioned,
and that the courtesies had no influence. We put it all
upon the ground that one so influenced might, in all hon-
esty, but yet mistakenly, believe that he had not been in-
fluenced. In one word, no man may judge his own cause,
because of the fear the law has of what would result in
most cases, were he permitted so to judge. We have held
"there is no law preventing an officer from resigning" if,
for any reason, he is dissatisfied with his compensation
(*City of Council Bluffs v. Waterman,* 86 Iowa 688, at 693)
or his duties, or for any reason that appeals to him. It has
been held here and elsewhere that he should do so if his
private interests and his public duties clash, and he feels
himself under natural temptation to give preference to his
private interests. And these holdings have been based,
not so much on the results to be feared, but on the tempta-
tions surrounding such a clash in interest. And on like
reasoning are based the decisions which refuse all sanction
to any contract whatsoever in which the officer has any
interest, and which is made while he is such officer. All
this could as well have been said of the case at bar.

IV. There are some exceptions to the general rule.
For instance, a judge disqualified to try the merits may
still make a formal order remanding the litigation to a
competent judge. Or he may carry out the provisions of an
order of remand from a higher tribunal. In *Walker v. Ro-
gan,* 1 Wis. 511, two of the three judges of the court were
disqualified; but it is stipulated that the remaining justice
might hear and decide the cause, and that such decision
should be entered as the decree of the court. He did this

without assistance from the others. But on the rendition of the judgment, the other two sat *pro forma,* to make a quorum, and the decision was upheld. There is not and cannot be a claim that the action of Mr. Vorhies was a purely formal one. What has been said of *Walker v. Rogan,* supra, introduces that other exception to the general rule, that a judge otherwise disqualified by interest may still act, if, on his failure to act, there must be a failure of justice. See 29 Cyc. 1435.

We have disposed of every element in this summary except whether Mr. Vorhies was so placed by statute as that, unless he acted, justice would fail. Where that is the situation, judges have been permitted to judge their own cause; and there is one noted case wherein the entire membership of the court was impleaded as defendants, and the court acted *ex necessitate.* It is not action *ex necessitate* merely because, if one judge do not act, there will not be a given decision, or because, without his acting, the other members of the court may be unable to agree upon a decision. The legislature may provide a method under which an appellate court shall proceed, if its membership be equally divided. But in the absence of such provision, inability to agree upon a decision is, as seen, not to be cured by letting an interested party cast the deciding vote. In the case before us, two of the three members of the board were qualified to act. If they agreed, these two could establish the district, or settle, for the time being, that it could not then be established. There was a body competent to act and to decide. It follows that Mr. Vorhies was not acting *ex necessitate.* Then, too, he could resign as soon as it became apparent that his public duty and his private interests might clash. It is unlikely that, if he resigned for that reason, that his successor, chosen from the entire body of the county, would be a person who also was disqualified. And, unlike the situation in *Walker v. Rogan,* 1 Wis. 511, it

cannot be said that it would require years to make change in the personnel of the judges sufficient to make a disinterested quorum. And see *Case v. Hoffman*, 100 Wis. 314 (74 N. W. 220). True, the appointment upon resignation might have delayed the establishment of a desirable improvement. But so would the adverse vote of any two of the three members. And any such delay weighs little against establishing a rule which would permit one directly and tangibly interested to determine, as between himself and others who, too, have a substantial interest, that such action should be taken as comported best with the interest of the member who, in effect, decided the whole question by his one vote.

It may be conceded that much that is said in *State v. Fisk*, 15 N. D. 219 (107 N. W. 191), *In re Cranberry C. D. Dist.*, 128 Wis. 98 (107 N. W. 25), and some few other cases, runs contrary to the views we have expressed. But we decline to follow these cases.

V. Upon careful consideration, we are unable to find anything in either *Shreve v. Town of Cicero*, 129 Ill. 226 (21 N. E. 815), or *State v. Mayor*, 48 N. J. L. 101 (2 Atl. 627), that is relevant to or aids in solving this controversy.

VI. In view of the conclusions reached, we find it unnecessary to determine objections of the appellant other than to the disqualification of Vorhies.—*Reversed.*

LADD, PRESTON, and STEVENS, JJ., concur.